FENASCI v. S. H. KRESS & CO.

(May 25, 1931. Opinion and Decree.)
(June 8, 1931. Rehearing Refused.)
(July 17, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Arthur B. Leopold, of New Orleans, attorney for plaintiff, appellant.

Milner & Porteous and P. M. Milner, of New Orleans, attorneys for defendant, appellee.

HIGGINS, J. Plaintiff brings this suit claiming damages for personal injuries alleged to have been sustained on April 14, 1930, at 1 o'clock p. m., as a result of being pushed through a large plate glass show window in the arcade of the defendant's building. The defendant is charged with being at fault in permitting the plate glass to remain in its frame when its officers knew that it had been cracked and without barricading it when they knew that large crowds, who were doing their Easter shopping, were passing through the arcade.

The defendant admitted that there was a slight crack in the plate glass and that its officers knew of it; that they did not barricade it; that the plaintiff was injured as a result of being violently pushed into the plate glass show window and sustained injuries; but denied liability, averring that the crack in the glass was about three inches in length and did not come through the glass; that it was in the corner, where the copper railings and supports held the glass in position, being about 12 inches from one support and 10 inches from the other; that the glass broke in the center, when plaintiff was hurt, away from the place where it was cracked; that the crack in the glass in no way contributed to the accident, because the sole and proximate cause of the accident was the violent force with which the plaintiff was thrust against the glass by some member of the public in the crowd passing through the arcade.

There was judgment in favor of the de-

fendant dismissing the suit and plaintiff has appealed.

The plaintiff's evidence establishes that she is a young married woman and had gone into the defendant's place of business with her sister for the purpose of purchasing some Easter eggs. She came out of the building alone and was walking through the arcade, which was crowded, when someone in the crowd roughly and unexpectedly jostled or pushed her into the show window, causing it to break and large pieces of glass to fall, which severely cut and injured her, plaintiff being in a delicate condition at the time. She was immediately taken to the hospital, where her injuries were treated.

The defendant's evidence tends to show that the arcade is spacious. In the center of it were three small show cases and between them tables on which Easter·lilies were being offered for sale. The aisles on either side of these cases were eight feet in width and served as a means of ingress and egress to defendant's customers. The sides of the arcade were composed of large plate glass show windows. The glass in question was 10 feet by 12 feet and 5/16 of an inch in thickness and was held in brackets made of 1 1/8 inch copper strips, the glass being imbedded a half inch in this moulding. The copper moulding was screwed to the wooden frame of the window. It appears that on Good Friday evening, one of the window trimmers caused a glass shelf to fall, striking the lower part of the glass about 10 inches from one moulding and about 12 inches from the other, making a crack of three or four inches. The crack did not come through to the outside, which was perfectly smooth. The officers of the defendant company knew of this condition and, after inspecting it, concluded that it would be

safe and did not barricade it. The plaintiff was pushed through about the center of the glass, causing a considerable portion of it to fall, leaving a sort of arched portion of the glass remaining in the frame. All of the glass, as well as plaintiff, fell inside of the show window, the pressure being exerted from the outside. The three or four-inch cracked part of the glass in the lower corner was still intact and remained in the frame and was about 18 inches from the nearest place where the glass had broken. The copper moulding at the bottom was pulled out and the screws which supported it were broken off.

The crowd in the arcade at the time was not unusually large and not any larger than the regular Saturday afternoon congregation of shoppers.

It is the custom to put up barriers to protect plate glass show windows, adjacent to sidewalks, during the carnival season and New Year's eve on account of the tremendous number of people who congregate on the sidewalks, but it is not customary to take such precautions for show windows in the arcades of buildings.

The expert testimony offered by the defendant shows that the construction of the frame and the copper mouldings which supported and held the glass in position was done in the usual customary way. The thickness of the plate glass was also in accordance with the custom prevailing. These experts, in response to hypothetical questions based upon the facts of the case, gave as their opinion that the glass was safe unless an unusual pressure was exerted against it. They did not believe it was necessary to barricade the window.

The law is plain that everyone, under penalty of responsibility for resulting dam-

ages, is required to keep his building in such a state of repair that no part of it shall fall and cause injury to those lawfully on the premises, or those passing by it. Arts. 670, 2316 and 2322, R. C. C.; Tucker v. Illinois Central R. R. Co., 42 La. Ann. 114, 7 So. 124; Ramon v. Feitel Housewrecking Co. et al., No. 13,663 of this court, 134 So. 426, decided May 11, 1931.

The evidence shows that the crack in the glass was three or four inches in length and of such a nature as not to be dangerous to those using the arcade of the building. The evidence also shows that at the place where the plaintiff was violently or roughly shoved into the plate glass window was near the center of it. The great preponderance of the evidence is to the effect that after the accident the small portion where the crack in the glass was located was still intact and held firmly in the copper frames. The allegations of the plaintiff's petition and her own testimony conclusively established that she was roughly and forcibly pushed into the window by some member of the public who was using the arcade. The evidence convinces us that the defendant was not guilty of any negligence or fault which in any manner contributed to the most unfortunate accident. The proximate cause of the accident was the rough and violent push that the plaintiff sustained by some third person, for whose action defendant is not liable.

The judge of the trial court found that the defendant was free from fault and, after a careful review of the record, we are of the opinion that his finding was correct.

For the reasons assigned the judgment is affirmed.