Mona HALEY (Plaintiff), Respondent,

v.

The MAY DEPARTMENT STORES COM-
PANY, a Corporation (Defendant),
Appellant.

No. 29299.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1956.

George E. Lee, St. Louis, for appellant, Carter, Bull & Baer, St. Louis, of counsel.

Al. F. Gerritzen, Lawrence J. McKim, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is an action for damages for personal injuries sustained by plaintiff while a passenger on an escalator in defendant's store. Upon a trial to a jury there was a verdict and judgment for the plaintiff in the sum of $1,800. From this judgment defendant has appealed.

It was alleged in the petition that prior to the time plaintiff boarded the escalator defendant had permitted a great number of its patrons to enter said escalator, and that while plaintiff was standing on one of the steps of said escalator defendant, notwithstanding the fact that said escalator was filled to its capacity, and knowing that such condition was unsafe and subjected persons to great hazard, negligently caused, allowed and permitted a large additional number of its patrons to enter said escalator, crowding the same to its capacity and to a point of overflowing; that by reason thereof some of the persons in close proximity to plaintiff were so pushed by the crowd that they did, with great force and violence, push the plaintiff and caused her to fall and to sustain injury.

The negligence charged was: (a) failure to provide attendants to direct and control the flow of traffic so as to prevent overcrowding; (b) failure to exercise due care to discover the overcrowded condition; (c) failure to warn plaintiff of the crowded condition and the danger of injury; (d) failure to exercise ordinary care to observe that the escalator was reasonably safe by reason of its overcrowded condition; (e) negligently inviting plaintiff to use the escalator, when by the exercise of ordinary care defendant could have known that plaintiff was likely to be injured by such crowded condition, and that said escalator "being crowded to its capacity and to a point of overflowing" was not reasonably safe for the purpose for which it was being used at said time.

Defendant by its answer denied all the foregoing charges of negligence and set up

affirmative defenses of contributory negligence. Said allegations were that plaintiff (a) failed to watch the course of her footsteps and to exercise care in the manner in which she walked onto the escalator; (b) failed to exercise ordinary care in that she attempted to enter the escalator by placing one foot upon the tread of said escalator and failed to properly move her other foot so that she was caused to lose her balance and fall; and (c) negligently failed to support herself by holding on to the moving handrails, and failed to observe the manner in which she placed her feet on the moving treads.

The accident occurred on December 11, 1950, between 7:30 and 8:00 p. m. Plaintiff was at the time a customer in defendant's store. The store was quite crowded at the time. After entering the store plaintiff went to the fifth floor where she made a couple of purchases. She then decided to leave the store. She went to the escalator but was not able to get on it immediately on account of the number of people there who were attempting to get on it. These people were in a line which extended for quite some distance from the escalator. Plaintiff testified that as far as she knew it was an orderly crowd; that it moved fast, but exhibited no rowdiness. After plaintiff discovered this long line of people at the escalator she went to the elevators, intending to leave by that means, but discovered a large crowd waiting there. She made two or three trips between the elevators and the escalator and finally decided to get into the line in front of the escalator. There were no guards at the escalator to direct the flow of traffic. Plaintiff went to the end of the line. After taking that position the line filled up behind her. Plaintiff testified: "they just kept coming and pushing in behind us all the time." The line moved forward and plaintiff finally reached the first step. She then placed her hand on the handrail, stepped on the tread with her right foot and brought her left foot alongside the right. She further testified that when she had descended about half way, the crowd was "jamming and pushing" and "somebody pushed against me, and knocked

my right knee out from under me." Plaintiff then testified that she then fell on her left knee. The escalator kept moving and just before plaintiff reached the bottom she was picked up and carried off the escalator.

On cross-examination plaintiff testified that after she got into the line it moved forward very slowly. She stated that there was a comfortable space between her and the person in front of her, enough space to enable one to see when it came time to get on the escalator. As plaintiff proceeded toward the escalator she noticed the crowd behind her. She stated that it was the same sort of crowd as when she got into the line, and that the crowd did not push her onto the escalator. When she reached the escalator plaintiff looked down and watched carefully the course of her footsteps. She also stated that when the other people in this line reached the escalator they would pause momentarily, then step on and hold to the rail. After plaintiff got onto the escalator she didn't know what happened behind her, "because I didn't look back." Plaintiff further testified:

"Q. Now, I assume from what you said, Mrs. Haley, you were looking to the front of you, you were watching where your stair was carrying you, were you? A. That is right.

"Q. You didn't look back? A. Couldn't look back. There were too many people in behind me.

"Q. My question was, you did not look back. A. I did not look back.

\* \* \* \* \* \*

"Q. As I understand, nothing unusual happened at all from the time you got on until you got halfway down and all of a sudden you felt a blow, is that right? A. That is right, push.

\* \* \* \* \* \*

"Q. Where did that seem to come from? A. Come from the rear.

"Q. What about this person alongside of you? A. I don't know.

"Q. Well, did that person move? A. That I wouldn't know, Mr. Lee. * * * I was still holding (rail) when I got the push. * * * I don't know whether the one next to me was the one that was pushing. I don't think it was the one beside me. I don't see how that could have happened from the one standing beside me.

"Q. So it was the person behind you? A. I think that is the one.

"Q. Whether a man or woman, you don't know? A. I wouldn't know.

"Q. Or a child? A. I wouldn't know."

The case was submitted to the jury by an instruction which authorized recovery upon a finding (1) that at the time plaintiff entered said escalator it was filled to its capacity; (2) that defendant thereafter negligently and carelessly caused, allowed and permitted a large and additional number of patrons to enter upon said escalator, which further crowded said escalator to the point of overflowing; (3) that defendant failed to exercise ordinary care to provide an attendant to control the congested flow of traffic; and as a result of said negligence said crowd was pushed against plaintiff causing her to slip and fall.

■ It is insisted by appellant that the court erred in failing and refusing to direct a verdict for the defendant. We think that this contention must be sustained for the reason that plaintiff's evidence fails to show any negligence on the part of defendant.

The negligence charged was that defendant permitted additional customers to enter the escalator when it was filled to its capacity, thereby crowding said escalator "to a point of overflowing," and that defendant failed to exercise ordinary care to provide an attendant to control such "congested flow of traffic."

There was no evidence that the escalator at the time in question was filled beyond its capacity and to a point of overflowing. In our judgment, a contrary inference is the only one that could reasonably be drawn from the evidence. Plaintiff's own testimony shows that she went to the end of the line. The line moved forward slowly and the customers stood one behind the other. There was a comfortable space between them. As each customer reached the escalator he or she would pause momentarily, then step carefully onto the first tread. There was no rowdiness in the line. The crowd was orderly. After plaintiff boarded the escalator she never looked back. There was no other testimony offered concerning the manner of loading. Clearly, no inference of overcrowding could be drawn from this testimony.

■ A finding that it was the unruly action of the crowd which caused plaintiff to fall would rest on pure speculation and conjecture, and would necessarily be based on plaintiff's opinion as to what was going on behind her. She testified that when she was half way down the crowd on the escalator was "jamming and pushing." This testimony was not based upon any observation made by her, because she testified several times that at no time after boarding the escalator did she look back. Her testimony then was a mere opinion or conclusion based, no doubt, on the fact that she did receive a shove. Such an opinion cannot be accepted as evidence of the fact sought to be proved by it. Nor can an inference of unruly action by the crowd be based solely on the fact that she received a shove. To do so would be pure speculation. But even if the crowd did become unruly after plaintiff boarded the escalator, defendant cannot be held to have been negligent in failing to anticipate such conduct.

A case squarely in point is Tuttle v. Kline's, Inc., 230 Mo.App. 230, 89 S.W.2d 676. In that case plaintiff was injured while attempting to leave defendant's retail store through a revolving door. Defendant had advertised a sale of women's apparel for that afternoon. The streets and stores on that day were crowded—it being the Christmas shopping season,

There was a large crowd in the store, but none around the door when plaintiff started to leave. She started into the door and three youths suddenly came rushing through the door from the outside, causing it to revolve with great force and to strike plaintiff. There was a controversy between the parties as to whether there was a crowd outside the door and, if there was, whether the rushing through the door by the boys was caused by the crowd attempting to enter the store, or was merely action on the part of the boys, unconnected with the crowd. Plaintiff's theory of recovery, as disclosed by her main instruction, was that the door was suddenly and violently pushed against her by a large number of defendant's customers who were rushing and crowding to enter the store. There was a verdict and judgment for plaintiff. On appeal, it was urged that the instruction in the nature of a demurrer to the evidence should have been sustained. The court, in passing on this contention, viewed the evidence in the light most favorable to the plaintiff by assuming as true that plaintiff was injured by the action of the crowd. However, it was held that no case for the jury was made. The court said (89 S.W. 2d loc. cit. 678):

"The undisputed evidence shows that the door in question was of ordinary construction and use and that, if used properly by individuals, there was nothing dangerous about it, although it was dangerous if used by persons rushing through the entrance, especially if two or more persons got into one compartment at a time, the door being constructed for the purpose of accommodating but one person in a section. It seems to be well settled that the owner or the operator of a retail mercantile establishment, such as the defendant, if it exercises ordinary care in the construction and arrangement of its premises, including the doors and entrances thereto, is not responsible for the action of crowds of customers who use such premises or doors, as it is not held to be able to anticipate that they will injure one another. It is a well known fact that a large crowd of persons enter such stores, especially during the holiday season and when special sales are advertised, gathering around the counters and other places where such sales are being conducted and that those managing such stores ordinarily have no control over such crowds. They (crowds) are an unavoidable feature of mercantile life in large cities.' F. W. Woolworth & Co. v. Conboy, 8 Cir., 170 F. 934, 935, 936, 23 L.R.A.,N.S., 743; [and other cited cases].

"Of course, we are not intimating that a proprietor of a store who sees an unruly crowd, conducting itself in such a way as well calculated to result in injury to a customer, has no duty toward such customer, but we need say no more in this case than that he is not required to anticipate that a crowd will so conduct itself."

In F. W. Woolworth & Co. v. Conboy, 8 Cir., 170 F. 934, 936, 23 L.R.A.,N.S., 743, the same principle is announced in the following language:

"The crowd on the present occasion seems to have been somewhat more violent than usual. Still such crowds are often found in large stores at the time of special sales, and during holiday seasons. They are an unavoidable feature of mercantile life in large cities. The defendant on the occasion in question had no reason to believe that such a sale as it was conducting would lead to any uncontrolled or violent conduct on the part of customers visiting the store, and was not therefore required to maintain its store in an unusual condition of safety to meet such an emergency. It had no reasonable cause to anticipate such violence, but, on the contrary, had a right to believe that patrons would demean themselves with a proper regard to others using the store. It was not, therefore, guilty of any negligence by reason of anything done by the crowd. In the excitement plaintiff seems to

have lost her head and become wholly oblivious of her own safety or environment. She has met with an accident which is quite frequent, and there is nothing in this record justifying the shifting of her misfortune upon the defendant."

Plaintiff has cited a number of railroad cases where recovery was had for injuries due to uncontrolled crowds on station platforms and in railway cars. We have examined these cases and find them not in point. In each case an overcrowding was involved, together with a peril which reasonably should have been anticipated. In our judgment, these cases are not applicable, even though an escalator, under the authorities, is a common carrier.

The judgment appealed from is reversed.

MATTHES, J., and SAM C. BLAIR, Special Judge, concur.