[Civ. No. 23057.    Second Dist., Div. One.    Jan. 5, 1959.]

FLORENCE RUFO, Appellant, v. N. B. C. NATIONAL BROADCASTING COMPANY (a Corporation), Respondent.

Phill Silver for Appellant.

Moss, Lyon & Dunn, Fulton W. Haight and Henry F. Walker for Respondent.

FOURT, J.—This is an appeal from an order granting a motion for a nonsuit.

The plaintiff alleged in her complaint that the defendant had its principal place of business in Hollywood, California, and maintained a broadcasting studio at the corner of Sunset Boulevard and Vine Street; that upon said premises it maintained certain doorways to the studio which are the means of ingress and egress of the studio; that at the front of the studio there is a cement walkway with trees planted in basins. She further alleged that on August 10, 1953, at about 4:20 o'clock p.m., she *was present upon the premises of the defendant* as a guest of the defendant to see a performance, and that while she was walking to the end of a line composed of other guests she was pushed and shoved into the basin of a tree well in the cement walkway through the carelessness of the defendant, and that she thereupon fell and received injuries. She also alleged that the negligence of the defendant consisted of the following: (1) the defendant maintained the premises so that there was a sudden drop-off around the tree basin; (2) the defendant failed to warn her of the existence of the drop-off from the sidewalk, and it failed to maintain any supervision over the lineup of people who were waiting to enter the studio, and as a result of which she was then shoved backward with force and violence and fell to the cement near

one of the trees where there was a sudden drop-off from the cement to the dirt around the tree.

Appellant's opening brief states, ''Plaintiff's complaint was an action for personal injuries sustained on a *public sidewalk* in front of the defendant's premises.'' (Italics ours.)

The answer filed by the defendant denied that the cement sidewalk with trees planted in basins therein was on any premises owned, operated or maintained by it, and denied that there was any negligence upon the part of the defendant, and denied that the plaintiff was injured.

A summary of the testimony is as follows: The plaintiff was with two other persons each of whom had tickets for, and desired to enter a show at the defendant's studio. When they arrived in the vicinity of the studio they saw many people who were to attend the show and observed that such people had already formed into a line. One of the ladies who was with the plaintiff stated that she and the plaintiff started to get into the line, and she also stated that at the start of the line there were two persons abreast, but toward the end of the line it widened to three and four persons abreast across the sidewalk, and that there was space for only one person to pass between the people in the line and the tree where the accident occurred. The witness described the base of the tree and its relation to the sidewalk, and said that the dirt around the tree was about an inch below the level of the sidewalk. The plaintiff and her companions were in no particular hurry because when they arrived at or near the studio it was about 20 minutes before the studio opened for the show. They saw two lines formed, one for those persons with tickets, which extended east on Sunset Boulevard toward Argyle Street, and one for those without tickets which extended west toward Vine Street. The three women became separated. One of the ladies testified that she was walking in front of the plaintiff, and heard someone say, ''A woman has fell''; that she then turned around and by that time the plaintiff was on the ground. She further testified that an usher from the defendant's studio, who had been on or near the steps entering the studio prior to that time, went to the plaintiff and the plaintiff was then taken to a restroom in the building. The witness also stated that there had been no usher on the sidewalk supervising the lineup of persons before the plaintiff fell down. The witness indicated that there was a crowd immediately adjacent to the tree, and that it was necessary to walk single file to get through. This witness also stated that the

sidewalk where the accident occurred was about nine feet wide.

The plaintiff testified that as she and her companions arrived there was quite a commotion among the people trying to get into the line, and that by the time she got to where the tree was located there was no room left for anybody to walk by the line of people without stepping into the base or basin around the tree, and that a person had to make her way through the crowd. She stated that she was pushed and shoved, and that her foot went into the dirt around the tree and she fell to the cement sidewalk. She did not recall seeing an usher other than the one at the head of the line.

Under section 2055, Code of Civil Procedure, a supervising usher of the defendant company was called and he testified that he went to the scene of the accident. He said that it was procedure to have the people who expected to attend the show form in lines on the sidewalk and wait until the studio doors opened. He had instructed the pages working under him to keep the people in the lineup two abreast, to stand close to the inside edge of the sidewalk area rather than close to the curb near the street so as to leave sufficient space for pedestrians to pass to and fro; the pages also were to keep the line straight and orderly, and to see to it that there was no pushing and to see if people had tickets, and further to stop any cutting into the line by unauthorized persons.

It is to be noted that the plaintiff knew of and saw the crowd on the sidewalk, and saw the tree and the basin surrounding it. There was no evidence that the defendant planted any of the trees or had any control over them, or was in any manner responsible for them or for the basin around them. There was no evidence to show that the plaintiff ever knew or was aware that the defendant's ushers ever had come onto the public sidewalk to give any information or make any requests, and there was no evidence that the plaintiff had placed any reliance upon any usher. There was no evidence that the people in the lineup or those on the sidewalk were boisterous, noisy or unruly. Neither of the plaintiff's companions saw the accident.

In the plaintiff's deposition she stated that people were going in both directions on the sidewalk at the time of the accident, whereas, at the trial she testified that they were all traveling in the same direction excepting those standing irregularly in the lineup facing her. She further testified at the trial that she remembered that it was a man who had pushed her, ". . . because as I was trying to get in that line making

my way through there. I remember him on my left side here."
There is no claim that such man was in any wise connected
with the defendant.

After introducing the evidence above set forth, the plaintiff
rested her case and the motion for a nonsuit was granted.

Appellant now asserts that it was error to grant such a
motion, claiming that the defendant was under a duty to
exercise reasonable care to protect the plaintiff from injury
caused from the wrongful acts of other invitees, and further,
that independent of such duty there was a duty to refrain
from doing any affirmative act that would render the side-
walk dangerous for public use.

Counsel for the appellant has referred to many cases and
many situations, however, a review of such cases convinces us
that none of them is in point in the present case. This is not
a case where the plaintiff was an invitee of the defendant on
its own premises, nor was she hurt by any condition on the
premises of the defendant, nor was she hurt by anyone from
the premises of the defendant, nor is it a case where a crowd
became unruly and boisterous to the defendant's knowledge
and defendant failed to do anything about such conduct, nor
is it a case where the defendant roped off the sidewalk or
placed any obstructions thereon. The plaintiff makes no claim
that the condition was a nuisance. Most, if not all, of appel-
lant's citations relate to cases where the injury occurred upon
the premises of the inviter, and not in the street or sidewalk
area adjoining the premises. For example, *Stockwell* v. *Board
of Trustees*, 64 Cal.App.2d 197 [148 P.2d 405], was with
reference to an episode which occurred upon the Stanford
University campus; *Sample* v. *Eaton*, 145 Cal.App.2d 312
[302 P.2d 431], involved a patron attending a wrestling
match where another spectator shrew a bottle within the
premises; *Winn* v. *Holmes*, 143 Cal.App.2d 501 [299 P.2d
994], involved a patron inside of a restaurant who was as-
saulted by other patrons; *Charonnat* v. *San Francisco Unified
Sch. Dist.*, 56 Cal.App.2d 840 [133 P.2d 643], was a school
ground case where a boy was hurt by another student upon
the playgrounds; *Conner* v. *East Bay Mun. Utility Dist.*, 8
Cal.App.2d 613 [47 P.2d 774, 48 P.2d 982], was a case where
the defendant was doing street work and negligently per-
formed such work so as to hurt the plaintiff; *Terrell* v. *Key
System*, 69 Cal.App.2d 682 [159 P.2d 704], was a case of
one passenger being hurt by a "milling, brawling crowd" and
the conductor who saw the situation did nothing to prevent

the unruly group from hurting the plaintiff; *Edwards* v. *Hollywood Canteen*, 27 Cal.2d 802 [167 P.2d 729], involved a dance hostess who was hurt upon the dance floor of the defendant by an obnoxious participant upon the dance floor; P.2d 552], involved a skating rink patron who was hit while *Thomas* v. *Studio Amusements, Inc.*, 50 Cal.App.2d 538 [123 upon the floor by a person recklessly cutting in on the skating area; *Tschumy* v. *Brooks Market*, 60 Cal.App.2d 158 [140 P.2d 431], involved a market operator who owned a parking lot adjoining the building where the market was operated, and the person injured was on the lot which was a part of the same premises on which the market was operated; *Gastine* v. *Ewing*, 65 Cal.App.2d 131 [150 P.2d 266], where a dancer was being interviewed and asked to dance upon the premises and then injured; *Johnston* v. *De La Guerra Properties, Inc.*, 28 Cal.2d 394 [170 P.2d 5], where the property next door was used in conjunction with the building through a special arrangement.

We believe that the trial court was correct in granting the motion for the nonsuit.

■ The burden was upon the plaintiff to establish the elements of her case. There was no proof of negligence upon the part of the defendant, nor was there any proof of the proximate cause. Under such circumstances a motion for a nonsuit, directed verdict or judgment notwithstanding the verdict is in order. (*Dalrymple* v. *Hanson*, 1 Cal. 125, 127; *Holmes* v. *Moesser*, 120 Cal.App.2d 612 [262 P.2d 27]; *Bolar* v. *Maxwell Hardware Co.*, 205 Cal. 396, 402 [271 P. 97, 60 A.L.R. 429].) And such is the rule even though the evidence is conflicting. (*Zito* v. *Weitz*, 62 Cal.App.2d 161, 164 [144 P.2d 409]; *Nicholas* v. *Jacobson*, 113 Cal.App. 382, 389 [298 P. 505].)

■ It was appropriately stated in *Farmer* v. *Fairbanks*, 71 Cal.App.2d 70 [162 P.2d 26], involving a directed verdict, as follows (at p. 73):

"The trial court has the power, in a proper case, to direct a jury to render a verdict in favor of the defendant when 'there is no substantal evidence tending to prove all the controverted facts necessary to establish the plaintiff's case. It is not necessary that there should be an absence of conflict in the evidence. To deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one.' (*Newson* v. *Hawley* (1928), 205 Cal. 188, 190 [270 P. 364]; *Keller* v. *Markley* (1942), 50 Cal.App.2d 155, 156 [122 P.2d 614].)"

720

■ And continuing at page 80, the court said:

". . . While all reasonable inferences are to be drawn from the evidence and all conflicts to be resolved in plaintiffs' favor, nevertheless the inferences cannot be based upon speculation or conjectures, but must be based upon 'a fact legally proved.' (Code Civ. Proc., §§ 1958 and 1960.) To draw from plaintiffs' evidence the inferences which they would have us draw would be to decide a question upon mere speculation and not upon facts 'legally proved.' The mere fact that an accident happened in this case is not sufficient, of course, to establish defendants' negligence. The burden rested upon plaintiffs to establish that some act or omission on the part of defendants was the proximate cause of the accident. This burden, as appears from the foregoing résumé of the evidence, the plaintiffs have failed to sustain and their evidence lacks elements of proof essential to support a determination of negligence on defendants' part. This being true, there was no evidence requiring the submission of the case to the jury."

The tree, the basin around the tree and the sidewalk were all part of the public parkway, and were in no sense the premises of the defendant. There was no evidence that the defendant had anything whatever to do with any of the public walkway or sidewalk. ■ It was stated in *Schaefer* v. *Lenahan*, 63 Cal.App.2d 324, at page 326 [146 P.2d 929]:

"The general rule is that, in the absence of statute, there is no common law duty resting upon the owner or occupant of premises abutting on a public street to keep the sidewalk in repair. Consequently, in the absence of statute, it is well settled that such an abutting owner or occupant is not liable to travelers injured as a result of defects in the sidewalk, which defects were not created by the owner or occupant. (*Eustace* v. *Jahns*, 38 Cal. 3; *Martinovich* v. *Wooley*, 128 Cal. 141 [60 P. 760]; *Bolles* v. *Hilton & Paley, Inc.*, 119 Cal. App. 126 [6 P.2d 335]; *Black* v. *Southern Pac. Co.*, 124 Cal. App. 321 [12 P.2d 981].)"

Certainly it is not the law in this state that abutting property owners are responsible for whatever might happen to two pedestrians who collide with each other upon the sidewalk in front of their property.

In a recent case, *Winston* v. *Hansell*, 160 Cal.App.2d 570 [325 P.2d 569], the court, in affirming a judgment based upon the sustaining of a demurrer to the complaint without leave to amend, said at pages 576-577:

"In the instant case the appellant seeks to bring the facts within the exception to the general rule by the allegation that the defendants 'did make special use of said sidewalk in that said sidewalk was used as a driveway for automobiles.' . . . All that is alleged is that the sidewalk was used as a driveway by the abutting owners, and that such constituted a 'special use' of the sidewalk by the property owners. Certainly, in this day and age, the use of a sidewalk as a driveway to the abutting property is not a peculiar or unusual use of such sidewalk. It is one of the ordinary and accustomed uses for which sidewalks are designed. Private garages cannot be built to open directly onto the street, but must be set back at least to the property line in order to allow for sidewalks upon which pedestrians may travel. The use of part of the sidewalk as a driveway is imperative in most, if not all, locations. Such use is no more peculiar or unusual than using the sidewalk for pedestrians who desire to visit the owners of the abutting property. The allegations of the complaint clearly bring the case within the scope of the rule (of nonliability) announced in the Martinovich, Sexton and Schaefer cases.

.   .   .   .   .   .   .   .   .   .   .   .   .

"The judgment is affirmed."

█  Appellant suggests that the defendant should have supervised the people in the line on the sidewalk but failed to do so. To impose any such duty upon all of the abutting property owners, such as for example those presenting exhibitions or performances in stadiums, sporting arenas, theatres, schools, stores, etc., would be unrealistic and contrary to law. The defendant had no power over the persons upon the sidewalk and it could not expel them therefrom, and the ordinary American would give quick advice to any abutting owner who attempted to direct his activities while upon the sidewalk, assuming, of course, that during such time he was using the sidewalk he was behaving himself.

As indicated in *F. W. Woolworth & Co.* v. *Conboy,* 170 F. 934 [95 C.C.A. 404, 23 L.R.A.N.S. 743] (cited in *Blodgett* v. *B. H. Dyas Co.,* 4 Cal.2d 511, 513 [50 P.2d 801]), crowds are almost a matter of course in metropolitan areas, and it was there stated at page 936:

"The crowd on the present occasion seems to have been somewhat more violent than usual. Still such crowds are often found in large stores at times of special sales, and during holiday seasons. They are an unavoidable feature of

mercantile life in large cities. The defendant on the occasion in question had no reason to believe that such a sale as it was conducting would lead to any uncontrolled or violent conduct on the part of customers visiting the store, and was not therefore required to maintain its store in an unusual condition of safety to meet such an emergency. It had no reasonable cause to anticipate such violence, but, on the contrary, had a right to believe that patrons would demean themselves with a proper regard to others using the store. It was not, therefore, guilty of any negligence by reason of anything done by the crowd. . . . She [plaintiff] has met with an accident which is quite frequent, and there is nothing in this record justifying the shifting of her misfortune upon the defendant.'' (See also *Pridgen* v. *S. H. Kress & Co.*, 213 N.C. 541 [196 S.E. 821].)

In the case of *Smith* v. *Epstein Realty Co.*, 133 Neb. 842 [277 N.W. 427], the plaintiff purchased some groceries in the defendant's store, then left the groceries in the store while she went down the street on another errand, intending to return and pick up the groceries. The court said (at p. 428) : ''. . . plaintiff had left the store and gone a block away to shop at another store. Upon her return, and while still quite a distance away from the door leading into the store, she stepped back into a recess from the sidewalk and opened a door, and fell down a stairway leading to a billiard parlor in the basement. She had not re-entered the premises of the [defendant] and was about 40 feet therefrom when the accident occurred. It is attempted to fasten liability upon this defendant for the accident because the store had a display in the window which caused her to step back into the recess. Since when has it become negligence for a storekeeper to fill his windows with fresh stock so attractively displayed as to cause women to pause and examine it? We fail to find the allegations of negligence against the owner of the . . . store supported by sufficient evidence to require the submission of that question to the jury. (Citing cases.)'' (See also *Williams* v. *New York Rapid Transit Corp.*, 272 N.Y. 366 [6 N.E.2d 58] ; *Serlin* v. *City of New York*, 291 N.Y. 595 [50 N.E.2d 1009] ; *Snyder* v. *Salwen*, 317 Pa. 531 [177 A. 789] ; *Haley* v. *May Department Stores Co.*, (Mo.) 287 S.W.2d 366 ; *Rincon* v. *Berg Co.*, (Tex.Civ.App.) 60 S.W.2d 811; *Fenasci* v. *S. H. Kress & Co.*, 17 La.App. 170 [134 So. 779].)

In *Miller* v. *Welworth Theatres of Wisconsin*, 272 Wis. 355 [75 N.W.2d 286], the complaint set forth that patrons pur-

chasing tickets were required, because of the contiguousness of the theatre building, ticket window and public sidewalk, to stand on the sidewalk, and after buying a ticket to walk about ten feet upon the sidewalk to the theatre entrance. It was alleged that the sidewalk was cracked and the plaintiff caught her heel in the crack while buying a ticket and was hurt. She asserted that under the circumstances the defendant had appropriated and used the sidewalk as a part of its place of business and failed to maintain it safely for the patrons. The court said (at pp. 288-289):

"The allegations in the respondent's complaint do no more than claim that, because a patron of the theatre must stand on the public sidewalk adjacent to said building in order to purchase an admission ticket and because it is then necessary for said purchaser to walk approximately ten feet to the north on said public sidewalk to reach the entrance of said theatre, the result is that the sidewalk becomes a part of the theatre's place of business, and the owner is required 'to construct and maintain said area in a condition safe for use by the plaintiff.' The conclusion rests on a nonexisting duty. The complaint is demurrable because it does not state facts sufficient to constitute a cause of action. The effort to make it appear that the described area is a place of employment may be prompted by a wish, but it cannot rise above a conclusion on the pleader's part. . . .

". . . The municipality is responsible for the maintenance and repair of the sidewalk. We hold that the fact that in entering a store or place of business, in stopping to admire an attractive display in a show window, a patron approaches or stands on a public sidewalk does not make that pathway a part of the merchant's place of business or place of employment.

". . . The facts alleged being inherently insufficient to create or constitute a right in favor of the respondent and against the appellant based on a duty owed by the appellant, the order overruling the demurrer must be reversed." (See also *Porter* v. *California Jockey Club, Inc.,* 134 Cal.App.2d 158 [285 P.2d 60]; *Haberlin* v. *Peninsula Celebration Assn.,* 156 Cal.App.2d 404 [319 P.2d 418].)

As we have pointed out, in the present case the event did not take place upon any premises belonging to, or under the control of the defendant. The defendant had no right, power or authority over persons upon the sidewalk, and there was no

evidence of any prior negligent conduct of persons upon the sidewalk, and there was no evidence of any boisterous or unruly conduct upon the part of anyone.

The order is affirmed.

White, P. J., and Lillie, J., concurred.