[Civ. No. 24580. Second Dist., Div. One. Dec. 7, 1960.]

MICHAEL BURKE, Appellant, v. RUDY BLOOM et al., Respondents.

Calabro, Calabro, Calabro & Calabro and Alfred A. Calabro for Appellant.

Gerald E. McClusky, William W. Waters and Henry F. Walker for Respondents.

LILLIE, J.—Plaintiff sued Lee, Miller and defendants Bloom for personal injuries arising out of a rear-end collision. The trial court found Lee was negligent in the operation of a

1940 Studebaker and granted a default judgment for $16,827.20, found Miller to be the owner of the Studebaker and entered default judgment for $5,000, and after a full trial entered judgment against plaintiff and in favor of defendants Bloom upon a finding they were not negligent, from which judgment plaintiff appeals.

Appellant's contentions that the lower court's finding defendants Bloom ''were not negligent in the maintenance and operation of the 1955 Pontiac automobile'' is not supported by the evidence and is contrary to the law, and that the findings are unsupported by the evidence and the judgment is against the law, are predicated upon partisan evidence and a factual argument wherein he urges this court to reweigh the evidence and draw inferences contrary to those drawn by the trial judge. ▮▮▮▮ Neither contention is valid, either on the facts established by the evidence or under the well-defined rules on appeal—that the credibility of the witnesses, the weight to be accorded the evidence and the determination of factual conflicts and which of two or more inferences should be drawn from the evidence, are all matters within the exclusive province of the trial court (*Kuhn* v. *Gottfried,* 103 Cal.App.2d 80 [229 P.2d 137]); all conflicts in the evidence must be resolved in favor of the result reached below (*Berniker* v. *Berniker,* 30 Cal.2d 439 [182 P.2d 557]); all reasonable inferences are indulged in favor of the findings and judgment (*Burke* v. *Chrostowski,* 46 Cal.2d 444 [296 P.2d 545]; *McCarthy* v. *Tally,* 46 Cal.2d 577 [297 P.2d 981]) and the evidence must be viewed in the light most favorable to the respondent (*Primm* v. *Primm,* 46 Cal.2d 690 [299 P.2d 231]; *Grainger* v. *Antoyan,* 48 Cal.2d 805 [313 P.2d 848]; *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427 [45 P.2d 183]); and when a finding is attacked on the ground there is lack of substantial evidence to sustain it, ''the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact'' (*Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231]; *Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689]).

▮▮▮ On the trial all parties involved testified, as did the police officer who arrived at the scene after the accident; received in evidence were numerous photographs, a diagram, official documents of the Department of Motor Vehicles, a list of medical bills and a prior statement given by defendant Lee; and the trial judge personally viewed the damage to defend-

ant Bloom's car. It is undisputed that on December 22, 1955, at 8 a. m. plaintiff, driving his 1950 Chrysler, had been traveling south on Laurel Canyon Boulevard, and stopped at the intersection of Terra Bella for a traffic signal; that immediately behind him was Lee driving a 1940 Studebaker; and behind Lee was defendant Rudy Bloom driving his 1955 Pontiac. At the time there was a "very heavy" and dense fog, it was "exceptionally foggy," the streets were "wet and slippery" and visibility was limited.

At the trial (and now before us) plaintiff contended that defendant Bloom's Pontiac, as the result of following too closely behind the Lee Studebaker and going 35 to 40 miles per hour, veered to the left and struck the rear of the Lee Studebaker which was stopping or almost stopped ahead of him, thereby pushing the Studebaker into the rear of the plaintiff's stopped vehicle ahead, resulting in a whiplash injury to him. Defendant Lee, called by plaintiff under section 2055, Code of Civil Procedure, described the weather as "exceptionally foggy," and testified that as he stopped behind plaintiff's Chrysler, defendant Bloom came "skiing" up and hit the Studebaker from behind, pushing it into the rear of plaintiff's car

In finding Bloom not negligent, the trial court unquestionably believed the defense testimony of what occurred, rejecting plaintiff's version of the accident. In determining the credibility of the witnesses it undoubtedly was aided by the photographs showing the nature and extent of damage to the various vehicles, and the court's personal inspection of defendant's car. And obviously, it viewed with concern plaintiff's testimony that—prior to the impact he looked through his rear-vision mirror and saw defendant approaching from the rear behind the Studebaker, half on and half off the travelled right portion of the highway, going 35 to 40 miles per hour, veer to the left and crash into the rear of the Studebaker, causing it to strike his car—inasmuch as there was a very heavy fog, visibility was nil (around 15 feet), admittedly defendant's car was out of his straight line of vision, Lee's Studebaker was between defendant's car and his own, and plaintiff saw all of this from his rear-view mirror. Too, it is reasonable that the trial judge rejected Lee's testimony that he had stopped behind plaintiff, and defendant struck him (Lee) pushing his Studebaker into plaintiff's Chrysler, particularly in view of Lee's impeachment by his previous statement (Exhibit C) and Prentiss' testimony that Lee had long prior to

the trial told him that he (Lee) had struck plaintiff's Chrysler *before* he came in contact with defendant's car. In any event, the strength of the opposing evidence is immaterial, for on appeal the evidence is not weighed (*Estate of Jamison,* 41 Cal. 2d 1 [256 P.2d 984]) ; and as contended, we find nothing in the record pointing to the inherent incredibility of Bloom's story. On the contrary, the physical evidence described by the police officer, the photographs of the vehicles, and the nature and extent of the damage to the Studebaker and Pontiac lend to the reasonableness and verity of defendant's testimony and his contention that the Studebaker ran without braking into the rear of plaintiff's Chrysler causing an impact resulting in an upward thrust of the Studebaker and a short backward bounce, whereby the rear of the Studebaker on its way down landed on the grille of the hood of defendant's Pontiac, falling off onto the ground.

Defendant Bloom was driving his Pontiac 10-15-20 yards (30-60 feet) behind the Lee Studebaker going approximately 10 to 15 miles an hour; it was very foggy, visibility was "nil," and although he could and did see the Studebaker directly in front of him, he was unable to see the plaintiff's car ahead of the Studebaker. Without warning to Bloom the Studebaker ran into the rear of plaintiff's Chrysler ahead; he heard the crash and then 12 to 15 feet behind the Lee Studebaker, he saw the impact between the two cars cause the rear of the Studebaker to thrust forward up in the air; defendant immediately applied his brakes "real hard" stopping 5 or 6 feet behind the Studebaker; the rear of the Studebaker, in the air with its rear wheels 2½ feet off the ground, bounced back and as it came down to the ground, the rear bumper of the Studebaker grazed the top front of the Pontiac's hood and then fell off of defendant's car onto the ground. The Studebaker's only contact with the Pontiac came from above, hitting the top of the grille of the hood of the latter making a light dent in the chrome strip and a mark on the bumper. The damage was minor to both the rear of the Studebaker which had only a "small dent" *underneath* its bumper, and the front of defendant's Pontiac; the damage was substantial to the front end of Lee's Studebaker and the rear of plaintiff's Chrysler.

Forty minutes after the accident Officer Finch arrived at the scene. He determined two points of impact and took photographs showing the nature and extent of the damage to all three vehicles, in particular to the rear of plaintiff's Chrysler (Exhibit 5) and to the front of Lee's Studebaker (Exhibit 6).

Examining the street, the officer found no skid or like marks made by the Studebaker and, trying the brake pedal of the Studebaker, found it went down completely to the floor and only after he pumped it four times did it come up to within 2 inches of the floor. He measured 10 feet of skid marks made by defendant's Pontiac. Officer Finch also examined the rear of the Lee Studebaker and found only a "small" dent, the "metal was pushed in," in the right rear fender *underneath* the bumper; and the front of defendant's Pontiac revealed only a bent grille and slight damage to the chrome trim.

The photographs showing substantial damage to the rear of plaintiff's Chrysler (Exhibit 5); substantial damage to the front of Lee's Studebaker and slight damage to its rear (Exhibit B) and only minor damage to the front of defendant's Pontiac (Exhibit A), bespeak the cause of the contact between Lee's Studebaker and defendant's Pontiac and how it occurred —that defendant did not run into the rear of the Studebaker but that the impact by the Studebaker came from above; any contact between Lee's Studebaker and the defendant's Pontiac could not have caused the Studebaker to strike the plaintiff's Chrysler with enough force to cause the damage shown to his car; and that the damage to the rear of plaintiff's Chrysler was due entirely to the impact caused when Lee without any contact from defendant's Pontiac, ran into plaintiff's rear without applying his brakes.

The record clearly shows that in the trial court the plaintiff failed to sustain his burden of proving by a preponderance of evidence that defendant Bloom was negligent (*Palmer* v. *Crafts,* 16 Cal.App.2d 370 [60 P.2d 533] ; *Puckhaber* v. *Southern Pacific Co.,* 132 Cal. 363 [64 P. 480] ; *Delk* v. *Mobilhomes, Inc.,* 118 Cal.App.2d 529 [258 P.2d 75] ; *Rufo* v. *N.B.C. National Broadcasting Co.,* 166 Cal.App.2d 714 [334 P.2d 16] ; *Oldenburg* v. *Sears Roebuck & Co.,* 152 Cal.App.2d 733 [314 P.2d 33]), and we find nothing therein to justify a reversal of the lower court's factual determination.

In finding defendants were not negligent, the trial court impliedly found that there was no collision whereby defendant ran into the rear of the Studebaker as contended by plaintiff, and that the contact between the rear of Lee's Studebaker and the front of defendant's Pontiac came from above when from the force of the Studebaker's prior impact with plaintiff's Chrysler, the rear of the Studebaker bounced up and settled back down on the ground. Nevertheless, predicating his argument on the assumption there was in fact a

"rear-end collision" between the two whereby defendant ran into the Studebaker, appellant advances the position that this "raises an inference of negligence on the part of the driver of the Pontiac . . ." (A.O.B. p. 14) (*Donahue* v. *Mazzoli,* 27 Cal.App.2d 102 [80 P.2d 743]) justifying the application of the doctrine of res ipsa loquitur (*Merry* v. *Knudsen Creamery Co.,* 94 Cal.App.2d 715 [211 P.2d 905]) and that defendant's conduct was thus negligence *per se* in violation of section 531, Vehicle Code, requiring a driver to keep at such distance and to maintain such control over his vehicle as would enable him to stop without striking the vehicle ahead (A.O.B., pp. 21-22). Factually, the situation does not justify the application of the rule of the cases cited by appellant; but even assuming defendant ran into the rear of Lee's Studebaker ahead, contrary to the contention of appellant that fact alone would not necessarily make him guilty of negligence. Even those cases relied on by appellant recognize that a driver is not guilty of negligence merely because he collides with the rear of a vehicle ahead, regardless of section 531; and they hold that "the case as made by each party [in situations involving rear-end collisions] presented a question of fact for the jury . . ." (*Donahue* v. *Mazzoli,* 27 Cal.App.2d 102 [80 P.2d 743].) To the same effect is *Hirtz* v. *Porter,* 158 Cal.App.2d 801 [323 P.2d 172]; *Karageozian* v. *Bost,* 139 Cal.App.2d 874 [294 P.2d 778]; and *Elford* v. *Hiltabrand,* 63 Cal.App.2d 65 [146 P.2d 510]. Although the trial court properly applied the rule of *Merry* v. *Knudsen Creamery Co.,* 94 Cal.App.2d 715 [211 P.2d 905], to Lee who struck a standing vehicle (plaintiff's Chrysler), the evidence is ample in support of its implied finding that as between defendant and Lee, there was no collision between a moving and standing vehicle—thus the res ipsa loquitur doctrine urged in the Knudsen Creamery Co. case is not here applicable.

Under his Point II appellant urges "the findings are not supported by the evidence," and relating certain partisan evidence, argues the insubstantial nature thereof. We make no further comment thereon for his failure to point up the specific findings about which he complains.

Referring to the well-defined rule that findings must be made on all material issues, appellant claims the trial court erred in failing to find whether defendants "recklessly" and "carelessly" operated their Pontiac and whether defendants "proximately contributed in any degree to plaintiff's injuries" (A.O.B., p. 27). He argues that he alleged in his complaint

that defendants "negligently, recklessly and carelessly maintained and operated" their automobile, and that the lower court only found that defendants "were not negligent in the maintenance and operation" of their vehicle.

The record discloses that the findings of fact now under attack were actually prepared and presented to the trial court by appellant, thus foreclosing consideration of the merits of his claim that they do not contain findings on all material issues. (*Pacific Venture Corp.* v. *Huey,* 15 Cal.2d 711 [104 P.2d 641]; *Roberts* v. *Karr,* 178 Cal.App.2d 535 [3 Cal.Rptr. 98].) "An attorney who prepares inadequate or erroneous findings invites error on the part of the court, and if error is unwittingly committed by the court the responsibility rests on the attorney and his client. It is settled that where findings are prepared by counsel designated by the court and it appears that the attorney was at liberty to use his own judgment as to the text of findings, no claim of insufficiency of the findings will be entertained on appeal from the judgment. [citations] . . . From the fact that plaintiff's attorney prepared the findings it follows he requested no findings upon the issues as to which he contends the findings were deficient. Therefore, plaintiff must be held to have waived findings on those issues." (*Johnson* v. *Rich,* 150 Cal.App.2d 740, 747 [310 P.2d 980].) However, the point is entirely without merit for the finding that defendants were not negligent is a sufficient finding of the ultimate fact of the absence of negligence on the part of defendants to relieve them from liability. (*Strauch* v. *Bieloh,* 12 Cal.App.2d 278 [60 P.2d 582].)

Nor does it appear from the record that any objection to the findings was made to the trial court—either at the time they were presented and signed or on plaintiff's motion for new trial. Having prepared them, plaintiff must have explored the matter he now raises, and having made no claim to the court below that his findings did not cover all of the issues, the point was thereby waived. (*Kalmus* v. *Cedars of Lebanon Hospital,* 132 Cal.App.2d 243 [281 P.2d 872].)

 Lacking in merit also is appellant's present contention that the lower court erred in admitting Exhibit C in evidence instead of for the limited purpose of impeachment. Again we find a failure to make timely objection.

Exhibit C consists of a written statement of three pages, each admittedly signed by defendant Lee prior to trial. Appellant now claims it was hearsay. Plaintiff called defendant Lee, who had defaulted, as a witness under section 2055; he

testified at the trial that plaintiff's Chrysler stopped ahead of him, that he then stopped behind him and defendant's Pontiac came up behind him running into the rear of his Studebaker, knocking its front end into the rear of plaintiff's Chrysler; and that there was only one impact. On cross-examination defendant's counsel asked Lee if he ever made a statement to the effect that the front of his Studebaker hit the rear of the Chrysler *before* he was hit in the rear by defendant's Pontiac; he testified he did not recall. Finally, Lee stated he recalled that two men came to his place of employment in January 1956, to talk to him about the accident. Defense counsel showed Lee the three-page written statement, whereupon, plaintiff's counsel said "I would like to have the whole statement go in." Defense counsel then asked if he wanted to so stipulate, to which plaintiff's attorney said, "No. I just want a proper foundation for it." Then defense counsel, without objection, read part of the document to the witness Lee and asked him if he ever made such statements—that among other things, he approached the rear of plaintiff's Chrysler and within 10 feet applied his brakes but "was not able to stop" and he hit the stopped car, and then in a matter of two or three seconds he was hit from the rear by a third car; and that there were two separate and distinct accidents, the first impact when he hit the car ahead of him which was "pretty hard," and the second impact which was not "hard at all" and he "barely felt it." Lee who testified he could not recall making the statements, was shown the signature at the end of each page and the notation, "I have read the foregoing three pages and they are true"; he admitted the signatures were his and the notation was in his handwriting, as well as a correction on the first page whereon he wrote in additional words. He also said first, he read part of the statement before he signed it, and then, that he "glanced" at the statement and signed it; and he told the investigator (Prentiss) the substance of the statements. Defense counsel thereafter offered the three-page statement in evidence; it was admitted "next in order." Then counsel for plaintiff objected "on the grounds that there has been no showing that this was a free and voluntary statement." The judge overruled the objection "if that is the reason for it." Plaintiff's counsel then said, "The other one is, there is no proper foundation for the introduction." Reminded by the court that Lee admitted he signed the statement and that he glanced at it (which goes to its weight not its admissibility) counsel for plaintiff said, "All right," and the trial judge again admitted

the statement in evidence. At no time before the court below did counsel object to its admission as "hearsay," or request its admission be restricted to impeachment only. Properly admissible to impeach the witness Lee, plaintiff may not now complain of its admission on appeal in the absence of a request below that the evidence be limited to such purpose (*Hatfield* v. *Levy Brothers,* 18 Cal.2d 798 [117 P.2d 841]), he having waived his right thereto; and such hearsay evidence may be considered in support of the judgment (*Crocker-Anglo National Bank* v. *American Trust Co.,* 170 Cal.App.2d 289 [338 P.2d 617]). In any event, it may be fairly said that no prejudice resulted, for the trial court heard the matter without a jury and we presume the court gave only that consideration to the written statement to which it was entitled. (*Nason* v. *Leth-Nissen,* 82 Cal.App.2d 70 [185 P.2d 880].)

Although the record shows the use of a "hearsay objection" after Exhibit C had been admitted in evidence the last time, a careful reading of the entire proceeding reveals that it was made only in connection with an unsigned statement of the witness Lee taken down a week after Exhibit C was signed, by a reporter who was not then present at the trial, when counsel sought to also use this to impeach the witness Lee.

Appellant's claim of error that "the information contained in the foundation questions being incorrect, there was no proper foundation for the use of said document (Exhibit C) or its receipt into evidence" (A.O.B., p. 32) is unclear, but we assume he is basing the same on the conflict of the evidence concerning where Lee was at the time he signed the statement. We find no substance to his claim—first because he raises the point for the first time on appeal and second, because Lee admitted he signed the document.

At the trial, counsel's objection that "no foundation" had been laid was directed specifically to the contention "that he (Lee) did not read it." Actually Lee testified he read part of the statement; later, that he glanced at it. When the trial judge reminded plaintiff's counsel of this and in any event, it went to the document's weight, not to its admissibility, counsel said "all right" and it was admitted in evidence. Appellant now asserts that because Lee testified he signed the same at his place of work, and Prentiss said Lee signed it at his home, an inconsistency arose rendering the foundation improper. The argument is without merit for Lee himself admitted, without any question, that he signed the statement (Exhibit C) on each of its three pages and wrote in his own

hand a correction on the first page and the notation "I have read the foregoing three pages and they are true." Although where and before whom Lee signed the document may go to the weight of its contents and the credibility of Lee's testimony concerning it, which is for the trial court, it is immaterial to its admissibility.

Appellant's last point goes to the failure of the trial judge to permit Lee to explain his answers relative to Exhibit C. Other than brief references to various pages and lines of the transcript, appellant has neglected first, to point up his specific complaints; second, to set forth what if anything Lee wished to explain; and third, to show either error or prejudice. (*Mullanix* v. *Basich,* 67 Cal.App.2d 675 [155 P.2d 130]; *Santina* v. *General Petroleum Corp.,* 41 Cal.App.2d 74 [106 P.2d 60].)

After the admission of Exhibit C, counsel for plaintiff on redirect, in an effort to rehabilitate the witness Lee, taking the statement (Exhibit C) sentence by sentence and repeating the same, asked him if each was correct; he answered both in the affirmative and in the negative. Counsel then asked, "Then in a matter of two or three seconds I was hit from the rear by a third car," . . . "Is that correct?" Lee answered: "Yes, I think. I am going to tell you——," whereupon the court admonished him just to answer the question. Lee answered the question, "Yes"; he did not seek permission to explain, only started to volunteer information outside of the question; and plaintiff's counsel neither complained nor asked the court to permit him to speak further. In fact counsel directly proceeded to another question.

Again counsel asked Lee, "Is this true: 'The first impact, when I hit the car ahead of me, was pretty hard. The first impact, when I hit the car in front of me'?" and Lee answered, "Do you know—these statements—wait a minute, wait a minute, I have to explain myself, Your Honor." The court instructed him to answer the question, which Lee did with "No, No." After the court admonished the witness to confine his answer to the question, Lee wanted to volunteer further information which the court told him he could not then do. Plaintiff's counsel, without complaint or request to permit the witness an explanation, proceeded to his next question and the following colloquy occurred: Counsel, "Did you make this statement Mr. Lee: 'The first impact when I hit the car ahead of me.' You were asked that question?" Mr. Lee: "Yes." Counsel: "And what was your answer to that ques-

tion?'' Mr. Lee: "I don't know. I don't remember. You see, I explained they were talking, one guy was——'' The court: "No, no, wait a minute. He is asking you a question. You answer it. Proceed.'' Mr. Lee: "I am, your Honor, I answered 'no.' '' Counsel again continued examining without objection to the court's admonition or without request to permit the witness an explanation and asked him concerning the arrangement of the parties when he was questioned, which Lee explained.

The record, both before and after this on direct, cross and redirect examination, is replete with extended explanations of the witness concerning whether the statements were made, where, when, under what circumstances, the arrangements of the persons present, what he was doing at the time, whether the statements were true, and so on. Any claim that the witness Lee was denied the right to explain cannot be sustained by the lengthy examination of Mr. Lee and the ample opportunities he was afforded, and accepted, to explain Exhibit C.

For the foregoing reasons, the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.