No. 4094

*Second Circuit*

## NORTON v. LOUISIANA ICE AND UTILITIES, INC.

(July 14, 1931.   Opinion and Decree.)
(October 1, 1931.   Rehearing Refused.)
(November 30, 1931.   Writs of Certiorari and Review Refused by Supreme Court.)

J. B. Nachman, of Alexandria, attorney for plaintiff, appellee.

Overton & Hunter, of Alexandria, and A. R. Christovich, of New Orleans, attorneys for defendant, appellant.

DREW, J.   Plaintiff sued for $5,000 for injuries to his eyes, caused by the explosion of a bottle containing a strong solution of ammonia water. He alleged that defendant was engaged in the refrigerating business and, together with other things, that it installed and maintained ice cream cabinets with Frigidaire equipment in drug stores, restaurants, etc., using its frozen products; that defendant had installed such an ice cream cabinet in the establishment conducted by Maxie Bohrer in Alexandria, La., known as Midway Station; that Maxie

Bohrer conducted a hamburger and sandwich shop, in which he also sold ice cream made by defendant; that that certain cabinet was the property of defendant, and was kept in repair by it; that on June 24, 1930, in the afternoon, the agent of defendant went to the Midway Station to repair the cabinet aforesaid; that, in making the repair, the strong solution of ammonia water was used; that this solution is intrinsically dangerous and volatile, and, when subjected to warm temperature, gives off a gas that is subject to explosion; that the said agent carried to the Midway Station a bottle of said solution and placed same on the counter where the customers usually ate; that before he had completed his repairing the agent was called away on other business of defendant company, and, in leaving, failed to remove the bottle of ammonia water; that later in the afternoon plaintiff came into the sandwich shop to secure something to eat. He took a seat at the second stool from the end of the counter. Seeing the bottle directly in front of him, he attempted to move it to one side when the explosion occurred, throwing the solution into his eyes and face; that the bottle was not labeled, and he did not know its contents. He alleged gross negligence on part of defendant through its agent in leaving a dangerous solution on the counter without label or warning to any one of what the bottle contained; alleged the injury to his eyes, the damage caused him thereby, and prayed for judgment accordingly.

Defendant answered, admitting that the employee who was repairing the cabinet was its agent and the cabinet its property, and, if the agent was negligent, admits its liability. It denies that its agent was guilty of any negligence, and alleged that when he left the Midway Station he left the bottle of ammonia water at the bottom of the counter on the floor in a perfectly safe place, and pushed so far back as not to interfere with persons walking behind the counter; that unknown to its agent, some one placed the ammonia on the counter. It further plead contributory negligence in that plaintiff took up the bottle, unloosed the cork, and attempted to smell the contents when the fumes got in his eyes.

There was judgment in the lower court for plaintiff in the sum of $250 for pain and suffering, and in the sum of $1,000 for injury to his eyes. Defendant has appealed, and plaintiff has answered the appeal, praying that the judgment be increased to $5,000.

That the bottle on the counter contained 28% solution of ammonia water is admitted by defendant, and that its agent carried it to the Midway Station to be used in repairing the frigidaire in the ice cream cabinet is also admitted. It is also admitted that the injury to plaintiff was caused by the cork either blowing out or being removed by plaintiff. Although defendant denied in answer that the solution is inherently dangerous and volatile for the reason that it is subject to explosion without the aid of an outside agency, it is not seriously contended in this court. The oral testimony in the record of the pharmacist is convincing that it is inherently dangerous and volatile. There was also offered in evidence extracts from the United States Dispensatory, proved to be recognized authority by the pharmacists who were witnesses. From these extracts, we find the following:

"Stronger Ammonia Water. aq. Ammon. Fort.

"An aqeous solution of ammonia (NH3-17.03) containing not less than 27 per cent nor more than 29 per cent by weight, of NH3. Preserve it in a cool place in partially filled, strong, glass-stoppered bottles made of hard glass free from lead. Great caution should be used in handling this liquid.

"Great care should be exercised in opening bottles containing stronger ammonia water. It is safer if the ammonia has been kept in a warm room to cool it with ice before attempting to withdraw the stopper as the liberated gas, when warm frequently is forced out with extreme violence and accidents which have resulted in injury to the sight of the operator are recorded."

We therefore conclude tht the ammonia solution was a volatile gas-forming liquid, liable to explode when left in a warm place, and that defendant's agent was charged with this knowledge, and his duty was to exercise a degree of care in handling this dangerous article that was commensurate with the dangerous character of the article, and in such a manner as not to endanger persons who might come in contact with it.

The preponderance of the testimony, as found by the lower court on questions of fact, is with the plaintiff. The bottle of ammonia was placed on the counter by defendant's agent and left there for possibly two hours. There was no label on the bottle, and no one was warned of its contents. Plaintiff did not know it contained a dangerous solution. The sandwich shop was hot, there being in it at the time three different stoves or griddles burning, and, when defendant's agent began work on the Frigidaire, it was necessary to cut off all the fans, they being connected on the same switch. It is shown that June 24, 1930, the day of the accident, was very hot, and, with three fires burning, and no fans to drive the hot air out of this small place, it is easy to imagine that the shop was very warm, and certainly not a place to leave a 28% solution of ammonia water for a period of time of two hours, and defendant's agent was grossly negligent in leaving it on the counter where the unsuspecting customers of the sandwich shop would likely come in contact with it. Plaintiff came into the shop between 4:30 and 5 o'clock, ordered something to eat, and took his seat at the counter. Noticing the bottle in front of him, he did the natural thing in attempting to move it to one side, at which time the stopper blew out and the contents of the bottle went into his face and eyes. The negligence of the agent of the defendant in placing the bottle on the counter and going away and leaving it there was the sole proximate cause of the accident, and the defendant is liable for the damages to plaintiff caused by the accident.

The evidence does not justify the court in finding that plaintiff took the bottle in his hand, removed the cork, and attempted to smell the contents. This is the plea of contributory negligence alleged by defendant, and the burden is on it to establish the negligence of plaintiff under its pleading. In this it has failed.

Plaintiff was burned particularly on the left cheek and eyebrow, and over the top angle of the nose and on the left side. The left eye was burned, as well as the cheek and face and the right eye, and some scattered places on the right cheek were also burned. The right eyelid was not burned as badly as the left. He was confined to his bed in the hospital and at home from June 24th to July 12th, and treated by Dr.

McGill until July 22d, when he was put in charge of Dr. Littell, an eye specialist. He suffered great pain during that time, and could not see out of right eye for four or five days, and out of left eye for ten days or two weeks. Dr. Littell found a slight ulcer in the right eye and a large ulcer in the left eye, practically covering the entire pupil. In August, following, he was fitted with glases, and, when using them, could see normally, and in February following his eyes had grown much worse. He had at the time of trial a vision of 21/100 in the left eye and 20/70 in the right eye, and the specialist holds little hope for further recovery of vision.

Plaintiff has been an officer of the law for the past ten years, and was a traffic policeman at the time of the injury. He has held his job since the accident, no doubt due to the big-heartedness of his superior officer. He certainly would not be selected in a competitive test with his defective vision. The award for pain and suffering we will not disturb, but think the award for partial impairment of vision of $1,000 is inadequate and not in line with the jurisprudance of this state, and that same should be increased. The average amount allowed for the loss of one eye by the courts of this state is approximately $6,000, and in the case of Thompson v. Y. & M. V. R. Co., 47 La. Ann. 1107, 17 So. 503, the court allowed the sum of $2,500 for the partial impairment of one eye. Under all the circumstances and conditions of this case, we think a proper judgment for the partial impairment of the vision of plaintiff would be $2,500.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended by increasing the judgment in favor of plaintiff from $1,250 to $2,750, and, as so amended, the judgment be affirmed.