### STRITZINGER v. WAGNER et al.

### No. 17210.

Court of Appeal of Louisiana. Orleans.

April 8, 1940.

Gill & Simon and Warren M. Simon, all of New Orleans, for appellant.

John May and Sidney G. Roos, both of New Orleans, for appellees.

JANVIER, Judge.

Mrs. Elizabeth Stritzinger, widow of Alvin Luke, brought this suit against Fred Wagner and the Travelers Insurance Company, claiming $10,067.85 to compensate her for physical injuries sustained and medical expenses and losses incurred as the result of a fall which occurred on March 11, 1938, while she was purchasing fruit from a vendor whose place of business was located in a building owned by Wagner and in which building, also, Wagner himself conducted a meat market.

Plaintiff charges that her fall resulted from catching her foot in an open mesh

empty sack, which, through carelessness, had been left on the floor at the point at which she stood while making the purchase. She bases her claim that Wagner is liable on any one of several theories:

First, that both the fruit and vegetable stand at which she was making the purchase and the meat market were actually operated by Wagner.

Second, that if Wagner did not operate the vegetable and fruit stand at which she was making the purchase, by the erection of signs on the building and otherwise he held himself out to the public as the operator of both businesses which were conducted in the building, and is, therefore, liable by reason of the estoppel thus created. And,

Third, that, as the owner of the building in which the vegetable and fruit business was conducted, he is liable to anyone injured by reason of any defect in the building.

Plaintiff makes the Travelers Insurance Company defendant on the allegation that that company had issued to Wagner a policy of public liability insurance, which fact, because of the effect of Act No. 55 of 1930, gave to her the legal right to bring a direct action against Wagner's insurer in any case in which Wagner himself might be liable.

All of the allegations concerning the fall and the cause thereof are denied by defendants, but primarily they rest their contention that there is no liability in Wagner, or in his insurer, on the assertion that the fruit and vegetable stand from which Mrs. Luke was making her purchase was owned and operated by one S. M. Carlisi for his own account, and they maintain that, if plaintiff fell and if the cause of the fall was the sack in which she claims she caught her foot, there is no liability therefor in Wagner or in his insurer, and that her redress, if she is entitled to redress, must be obtained from Carlisi.

Defendants also maintain that the so-called "holding out" doctrine on which plaintiff, in one of her contentions, relies, has no application whatever except in cases of contract, and that, where a suit is based on tort, it cannot be availed of. And defendants also maintain that no liability is placed in Wagner merely by his ownership of the building since it is not contended that there was any defect in the building itself, either in original construction, or resulting from neglect to make repairs.

In the district court there was judgment dismissing plaintiff's suit for the reason, as given by the district judge, that plaintiff has failed to prove that she was injured through any fault or negligence on the part of Wagner since it appeared that Wagner had no interest whatever in the fruit business.

If the record warrants the conclusion reached by the district judge that, conceding that plaintiff's fall was the result of negligence, Wagner was in no way involved, had no connection with the operation of the fruit and vegetable stand, and that his ownership of the building did not render him liable, then the judgment must be affirmed; and accordingly, before examining the evidence touching upon the cause of the fall, we deem it more expeditious to consider whether Wagner can be held in any event, or in any way, responsible therefor.`

The building, concededly owned by Wagner, bears the municipal numbers 4101–03 St. Claude Avenue. On the outside there is placed a sign reading "Wagner's Market". There is a door on St. Claude Avenue opening into the one-story building. As one enters, to the right is a meat market operated by Wagner and to the left is a fruit and vegetable stand owned and operated by Carlisi. On the inside of the building there are no signs indicating that the meat market is operated by Wagner, nor that the fruit and vegetable stand is operated by Carlisi.

Though counsel for plaintiff vehemently contends that, because there is no evidence of a written lease, the record fails to show that there is any lease at all, it is quite clear that the statements of Wagner and Carlisi are true and that the latter occupies a part of the premises by reason of a verbal lease under which he pays to Wagner the sum of $5 per week. The record shows that, as a result of this verbal lease, Carlisi is allotted the uptown, or left half of the building for the operation of his fruit and vegetable stand and that he agrees to keep clean his part of the establishment.

Plaintiff was a resident of that neighborhood and there seems to be no doubt that she had been dealing at this fruit stand for some time, though she says that she had no knowledge of the fact that it was operated by Carlisi.

Carlisi obtained his own City and State licenses and purchased all of his supplies of vegetables and fruit in his own name. He

sometimes delivered for his customers and, in doing so, used a motor-truck which was owned by him and which bore his name. It is not shown that Mrs. Luke had ever seen this truck, though it was customarily parked near the building and though she concedes that on Saturdays, her orders were sometimes delivered to her home.

On the day on which the accident occurred she entered the building to buy fruit. She had no business to transact with Wagner. She states that, as she entered, she found the direct route to the fruit stand blocked by boxes and bags and therefore, using the aisle to the right and in front of Wagner's meat stand, proceeded to the rear of the store, and then, turning to her left, walked back towards the front, into that part of the building which was occupied by Carlisi. She then stood between a row of sacks of potatoes and a stand from which were hanging bananas, which she desired to purchase—in other words, entirely within that part of the building which, whether she was aware of it or not, was occupied by Carlisi under lease. It was while she was standing in that spot that she claims to have caught her foot in the open meshes of an empty sack, falling and sustaining injuries which had serious results.

In the first place, it is argued on behalf of plaintiff that Wagner, as the owner of the building, is liable, because it was dangerous to anyone within it, by reason of the sack or sacks on the floor, over which anyone might trip, or in any of which the shoe of any customer might be caught.

But this is not a case in which it is contended that any neighbor or passer-by has been injured by the fall of any part of the building resulting from the negligence of the owner in failing to keep the building in repair. That type of case is contemplated by R.C.C. Article 670. Nor is it a case in which damage has resulted not from the fall of any part of the building, but otherwise, from the neglect of the owner to keep it in repair, or from a vice or a defect in original construction, which type of case is contemplated by R.C.C. Article 2322. Nor is it a case brought by a lessee against a lessor under Articles 2693–2695 of our Code, for, in no way at all is the relationship of landlord and tenant involved as between plaintiff, Mrs. Luke, and defendant, Wagner. Therefore, none of those articles affords any relief to Mrs. Luke. We know of no codal article, nor of

any rule of law, nor of any reason at all, requiring a holding that a lessor is liable to persons who, while in leased premises to visit or to trade with the lessee, may be injured because of negligence of the lessee in failing to keep the floors clean and free of obstructions.

There is, it is true, an obligation in every storekeeper to use ordinary care to keep his premises reasonably safe for his customers. Farrow v. J. R. Thompson Company, 18 La.App. 404, 135 So. 80, 137 So. 604; Norton v. Louisiana Ice & Utilities, Inc., 18 La.App. 564, 135 So. 717; Fenasci v. S. H. Kress & Co., 17 La.App. 170, 134 So. 779; Theodore v. J. G. McCrory Co., 17 La.App. 684, 137 So. 352; Huber et ux. v. American Drug Stores, 19 La.App. 430, 140 So. 120. Therefore, if Mrs. Luke had entered the establishment to trade with Wagner and, on entering, had been confronted with a dangerous situation, there might have been liability in Wagner under the rule which was followed in those cases. Or, possibly, if she, entering the establishment to trade with Carlisi, had encountered a danger created by Wagner, he, under Article 2315 R.C.C., may have been liable. But Wagner had nothing whatever to do with the creation of the danger which plaintiff alleges she encountered and Mrs. Luke did not enter the building for the purpose of trading or conducting any business with him.

Counsel for plaintiff, insisting that, where a lessee-storekeeper is liable to a customer because of a danger which causes injury, the lessor, as owner of the building, is also liable, rely upon the holding in Grigsby v. Morgan & Lindsey et al., La. App., 148 So. 506, 510, in which both the lessee-storekeeper and the lessor were held liable to an injured customer of the former. But there the danger which caused the injury was a defect in the building, for which, because of neglect to make repairs, the owner was responsible. It was not caused by an obstruction placed or left there as a result of the negligence of the lessee-storekeeper alone. The court plainly said that the owner of the building was liable because of neglect to make repairs and that this liability resulted from the effect of Articles 670 and 2322 of the Code. The court then, considering the possible liability of the storekeeper, said that "it is the duty of a store proprietor to provide safe place for his customers to trade with him", and

followed this with the conclusion that, since that duty exists, the fact that the owner of the building might also be liable did not in any way absolve the storekeeper. That case is clearly distinguishable.

■ Counsel next contends that, since Mr. Wagner owned the building and operated in it a meat market and since he erected on the outside of the building a sign reading "Wagner's Market", he held himself out to the public as operating both the establishments which were conducted in the building. But the answer to this contention is that the "holding out" doctrine has no application whatever in tort matters. Mrs. Luke cannot contend that, because of Wagner's "holding out" that he operated everything in the building, there is liability in him for the torts of Carlisi. Were any contract involved, or any relationship in which Mrs. Luke was justified in assuming that she was any more safe in dealing with Wagner than she would have been in dealing with Carlisi, then this doctrine might find application here. But it is well settled, in this state and elsewhere, that the doctrine has no application in tort matters.

In Jung v. New Orleans Railway & Light Co. et al., 145 La. 727, 82 So. 870, the Supreme Court of this state held: "The law of estoppel applicable to the acts of persons in contractual dealings holding others out to the public as their agents does not apply to an action ex delicto for personal injury, involving the issue of agency between defendant and one whose negligence caused the injury." Syllabus.

See, also, Abate et al. v. Hirdes et al., 9 La.App. 688, 121 So. 775, 777, in which we said: "Of course, the fact that the name, 'Item Tribune,' was painted on Hirdes' truck, is of no importance whatever, and cannot be said to in any way affect the issues involved."

The question is discussed by Mr. Mechem, in his work on Agency, Volume 1, page 512, paragraph 724, as follows: "Inasmuch as the whole doctrine of powers by estoppel rests upon the theory that the other party has been lead to rely upon appearances to his threatened detriment, it is obvious that the doctrine can apply only in those cases in which this element of reliance was present. It can therefore apply only to cases in which credit has been extended, action has been induced, delay has been obtained, or some other change of position has occurred, in reliance upon the appearance of authority, and not to cases of mere tort, such as negligence, trespass, assault. Actions based upon the contract furnish, of course, the most frequent opportunity, but actions for deceit or misrepresentation may also be included within the category. Reliance upon appearances, however, does not ordinarily induce to assault, slander, trespass, or negligent injury, and the cases must be very rare, if any, in which it could be an element."

Commenting on the above quoted statement of Mr. Mechem, our Supreme Court, in the Jung case, supra, said: "However, the principle upon which such acts or representations are held to preclude the principal from denying the truth of the matter which they purport to establish is that persons acting on the faith thereof have been lead to change their position or status in such a way that to permit a denial would cause them injury or loss. No such condition exists in an action ex delicto, or to say that the party injured would have acted differently, if he had known the true facts, would be to, in effect, convict him of contributory negligence."

For the reasons assigned, the judgment appealed from is affirmed at the cost of appellant.

Affirmed.