140 So.2d 734 (1962)
St. Cyr ROMERO, Plaintiff-Appellee-Appellant,
v.
CHRIS CRUSTA FLYING SERVICE, INC., et al., Defendants-Appellants-Appellees.
No. 554.
Court of Appeal of Louisiana, Third Circuit.
May 7, 1962.
*735 Johnson & LeBlanc, by Milton L. LeBlanc, Jr., New Iberia, for plaintiff-appellee-appellant.
J. E. Kibbe, Abbeville, for third-party plaintiff.
Voorhies, Labbe, Voorhies, Fontenot & Leonard, by Donald Labbe and H. Lee Leonard, Lafayette, for defendant-appellant-appellee.
Broussard & Broussard, by Marcus A. Broussard, Jr., Abbeville, for defendant-appellee.
Before TATE, FRUGÉ, and HOOD, Judges.
TATE, Judge.
The plaintiff Romero sues to recover for crop damages. The loss was allegedly caused by the drift onto his own fields of a 2-4-D herbicide sprayed by air on June 21, 1959 on rice fields in the vicinity farmed by one Bodin. Made defendants are Bodin, the Chris Crusta Flying Service (which was employed by Bodin to perform the spraying operations), and the latter's liability insurer.
The trial court awarded the plaintiff $892.02 for the crop damages caused by these spraying operations. The defendants appeal; the plaintiff does also, asserting that the award was inadequate.
It is shown beyond dispute that the plaintiff's pepper and cotton crops were damaged by a 2-4-D driftage, the damage first evidencing itself 4-5 days after the June 21st spraying on the Bodin rice fields. By their appeal, the defendants chiefly urge that the plaintiff has not borne his burden of proving that such crop damage resulted from the defendants' spraying operations of June 21st; the defendants claim that the damage may have resulted from spraying operations conducted by others.
Despite astute arguments to the contrary by counsel for the defendants-appellants, however, we think a preponderance of the evidence proves that the plaintiff's damage did result from the drift onto his crops of the 2-4-D chemical used by the defendants in the June 21st spraying.
The plaintiff's growing pepper and cotton crops were from one-half to three-fourths of a mile northerly of Bodin's fields. The defendants' spraying commenced at about 7:00 AM on June 21st. It was the only *736 operation in the vicinity using 2-4-D poison. Three persons living next to the plaintiff's pepper and cotton fields smelled the poison during and immediately after the spraying. The plaintiff's crop damage began to evidence itself about four days later. The major portion of the crop damage was on the side of the plaintiff's fields closest to the defendant Bodin's rice acreage. The crops of others farming the area between the plaintiff's fields to the north and the defendant Bodin's fields to the south also sustained 2-4-D damage following the defendants' spraying.
The weather report in evidence indicates variable winds on June 21st, with, for instance, the wind shifting from the north at 06:58 AM to the east at 07:57 AM (Tr. 49). In addition, a highly qualified expert testified without contradiction that, under the present circumstances (including the highspeed and highly-atomized spraying by a fixed wing aircraft, with the resulting turbulence and updrift), it was entirely possible for the 2-4-D to cause the crop damage up to three miles away, even though the spraying was done with the wind at the time blowing away from the damaged area. Further, he testified, enough particles could have remained in the air to be carried northward to the plaintiff's fields when the wind shifted within the hour.
The defendant and others conducting the spraying operation with him testified that the wind blew from the north (away from the plaintiff's fields) during the entire 15-20 minutes during which the spraying operation was conducted. However, under the testimony of the expert, the spraying operation could nevertheless have caused the plaintiff's crop damage.
Nor do we find impressive the defense that the plaintiff's undoubted 2-4-D crop damage may have resulted from spraying operations to the north of the plaintiff's fields conducted by another person two days before June 21st. This defense is supported by the uncorroborated testimony of the defendant Bodin alone; additionally, the plaintiff's heaviest crop damage was sustained on the south side of his fields, towards the defendant Bodin's operations, and not on the north side, where it might have been expected had these other spraying operations to the north been the cause. Likewise, the evidence shows that certain hand-spraying operations of another neighbor also blamed by the defendants did not take place until more than a week after the first damage to the plaintiff's crops was observed.
We thus affirm the trial court's finding that the preponderance of the evidence proves that the plaintiff's 1959 pepper and cotton crops were damaged by the June 21st spraying operations, so that the defendants are solidarily liable therefor. Gotreaux v. Gary, 232 La. 373, 94 So.2d 293; Trahan v. Bearb, La.App. 3 Cir., 138 So.2d 420.
The trial court awarded the plaintiff $207.54 for the net damage to his cotton crop and $684.48 for the net damage to his pepper crop, for a total of $892.02. By his own appeal, the plaintiff questions both of these awards as insufficient.
As to the cotton crop, the trial court allowed damages based upon a loss of 30% of production, based upon the testimony of the defendants' experts. In urging a higher award, able counsel relies only upon the plaintiff's own estimate in his testimony that he should have harvested ten bales instead of the lesser amount actually made in the damaged field; the estimate, however, is not corroborated by any evidence as to production in other fields in the area, or of this field during past years, or by any expert testimony. We find no error in the trial court's accepting the testimony of the defendant's experts as to this loss instead of the uncorroborated estimate of the plaintiff himself.
As to the damages caused to the plaintiff's pepper crop, the evidence shows that he harvested 1488 gallons from his *737 two-acre pepper patch. The defendants' experts, who observed the pepper crop and the plaintiff's sincere efforts to save it after the damage, estimated that, had it not been for the poisoning, the plaintiff could have been expected to harvest 2000 gallons per acre, or 4000 gallons. The plaintiff's expert, who likewise made detailed examinations of the pepper crop from time to time, estimated that without the poisoning the plaintiff should have harvested 2500 gallons per acre, or a total of 5000 gallons. Although some of the defendants' lay witnesses by observation from the road thought that the plaintiff did not make a full crop because of a November frost, detailed testimony by a pepper buyer and by the plaintiff proves that the plaintiff had completely harvested his pepper crop before this frost fell.
Because the plaintiff's expert also estimated the loss in the plaintiff's crop as "one half or more" or "pretty close to half or half", our learned trial brother felt that the evidence warranted a finding that the plaintiff had only lost one-half of his pepper crop; the trial award was then based upon the plaintiff having lost 1488 gallons of peppers, an amount equal to that which the plaintiff had harvested.
We think, however, that the loss should not be based upon the generalized estimate that the plaintiff lost about "half" his pepper crop, when the defendants' and the plaintiff's experts without contradiction testify that the expected production, without the poisoning, should have been between 4000 and 5000 gallons instead of the 1488 gallons actually harvested. We will therefore amend the award, so as to base it upon a loss of 2512 gallons of peppers (the 4000 which would have been made, less the 1488 actually harvested), at an average selling price of 85¢ per gallon, less 39¢ for picking and trucking costs. The plaintiff has thus in our opinion proved a net pepper crop damage of $1155.52, instead of the $684.48 awarded by the trial court. The judgment in the plaintiff's favor will therefore be increased by $471.04.
For the foregoing reasons, the judgment is amended so as to hold the defendants solidarily liable in the additional amount of Four Hundred Seventy-One and 04/100 Dollars; as thus amended, it is affirmed in all other respects. The defendants to pay all costs of these appeals.
Amended and affirmed.