162 So.2d 53 (1964)
Theodore WILLIAMS et al.
v.
J. B. LEVERT LAND COMPANY, Inc.
No. 6060.
Court of Appeal of Louisiana, First Circuit.
January 27, 1964.
Rehearing Denied March 2, 1964.
Writ Refused April 17, 1964.
*54 O'Neal & Waitz, by A. D. O'Neal, Houma, for appellant.
Johnny X. Allemand and Numa F. Montet, Thibodaux, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
Petitioner, Theodore Williams, instituted this wrongful death action against defendant, J. B. Levert Land Company, Inc., seeking damages individually, and on behalf of his seven minor children, for the alleged tortious demise of Rosa Mae Edmonds Williams, wife of petitioner, Theodore Williams, and mother of the minor co-plaintiffs herein. From the judgment of the trial court awarding petitioner, Theodore Williams, damages in the sum of $6,150.00 and awarding plaintiff children damages in the aggregate of $32,250.00, defendant has appealed. Plaintiffs have answered the appeal praying for an increase in the awards allotted by the court below.
The circumstances attending the tragic incident which resulted in this litigation are comparatively simple and virtually without dispute as will hereinafter appear. There is, however, considerable disagreement between the opposing parties respecting the legal principles applicable in this matter.
It is conceded by all concerned that decedent, Rosa Mae Edmonds Williams died August 5, 1960, of burns received June 26, 1960, while riding in the trailer of a tractortrailer farm unit owned by defendant, J. B. Levert Land Company, Inc., sometimes hereinafter referred to simply as "Levert"' or "appellant", and being operated at the time by defendant's employee, Richard Edmonds, brother of decedent, Rosa Mae Edmonds Williams. The unfortunate accident occurred when decedent attempted to extinguish a cigarette on the bed or floor of the trailer (wagon) in which she was riding and thus ignited a highly inflammable chemical weed killer, sodium chlorate, present on the floor of the trailer which was used by defendant in the control of weeds on defendant's large plantation, known as Webre Plantation, situated in Lafourche Parish, Louisiana.
Plaintiff, his deceased wife and minor children resided on Webre Plantation belonging to defendant corporation by which plaintiff was employed as a farm laborer. As part of plaintiff's wages he was furnished a house in which he and his family lived, *55 said house being situated in what is known as "the quarters" meaning a group of houses constructed and maintained on the plantation by defendant as residences for its regular employees. The quarters in which plaintiffs and decedent lived were situated approximately 15 feet from a public road or highway which runs through defendant's plantation.
It is conceded that to control the growth of weeds and noxious grasses on its plantation, defendant utilized a weed killer known, according to the evidence, as sodium chlorate, a chemical in powder form. To apply the chemical it is generally mixed with water in certain proportions thus forming a liquid which is then sprayed on weeds by means of a mechanical spraying apparatus. Defendant concedes the substance is both poisonous and highly inflammable. It is further conceded the chemical in question will readily ignite upon application of flame and may also be ignited by heat generated by friction, such as that resulting from continued brisk rubbing of any surface to which the chemical has adhered.
Defendant had used the chemical on its plantation for a period of approximately three years preceding the date of the accident. The usual procedure followed by defendant's employees with respect to the use of the chemical was as follows: When it was desired to spray weeds a tractortrailer unit was used to haul the chemical and other necessary equipment and apparata. The herbicide, which came in cans with the word "Inflammable" written thereon in bold letters, together with a large drum in which the powder was mixed with water and also one or two spray guns used to apply the mixture, were placed in the trailer which was then towed by the tractor to the desired section of the plantation at which the spraying operation was to be conducted. The mixing procedure was accomplished once daily at a water faucet situated across the highway from plaintiff's residence in the quarters. Shortly before noon each day, the tractor driver charged with the duty of operating the vehicle assigned to spraying, would drive his unit to the aforesaid faucet and, using the drum as a tank, mix the proper proportions of chemical and powder in quantity sufficient to produce the desired amount of spray. Following completion of the mixing process, the driver in charge of the unit would then leave the vehicle unattended, go to his home for his noon meal and, following the noon hour, return to the vehicle and proceed to the scene of operation for the remainder of the day. Each night the trailer would be returned to the lot where the water faucet was situated and thoroughly hosed down with water to remove any of the chemical which may have spilled during the day's operation. It was similarly cleansed when it was no longer needed for weed control work and was to be assigned to other phases of the plantation's operation. When in use the driver was instructed to park the trailer in a lot approximately 200 feet distant from the quarters in which decedent lived. However, it was not uncommon for the driver to either leave the trailer parked in the lot where the water faucet was located or park it near his own house in the quarters across the highway. While being used for spraying the vehicle was not marked with signs or any other means to warn persons of the danger of fire.
Decedent and plaintiff had lived together on defendant's plantation for several years preceding the date of the accident in which the fatal burns were received. On June 26, 1960, defendant's employee, James Johnson, a tractor driver in defendant's employ, was assigned the duty of operating the spraying unit with the assistance of one or two other employees who were under his supervision. At about noon, Johnson drove the tractor-trailer to the water faucet, and went to the home of his brother in the quarters to eat his noon meal. He was to return thereafter, clean the wagon and put it away. In the vehicle at the time were two or three cans of the chemical, the large drum in which the liquid mixture was kept and one or two spray guns used to apply the chemicals. While the vehicle *56 was thusly laden and parked, Ella Queen, wife of defendant's employee, Edward Queen, who lived with her said husband in the quarters across the highway from where the tractor-trailer was parked, requested Richard Edmonds, brother of decedent Rosa Mae Edmonds Williams, to use the tractortrailer to take her fishing. Although he was an employee of defendant and lived in the same quarters as Ella Queen and his sister, Rosa Mae Edmonds Williams, Richard Edmonds was not engaged by defendant as a tractor driver and had no authority to use defendant's said equipment. Notwithstanding this circumstance, however, Edmonds went across the highway to where the tractor-trailer was parked, started the engine, went to the home of Ella Queen, picked up Ella and then stopped at decedent's nearby home where decedent, who had been requested by Ella to come along on a fishing trip, boarded the vehicle by getting into the trailer already occupied by her said acquaintance and neighbor. Edmonds then proceeded down the highway toward the "fishing ditch" and after he had gone approximately three-quarters of a mile decedent, who was smoking, attempted to extinguish her cigarette by dropping it on the floor of the trailer and crushing it with her foot. The heat thus generated ignited an invisible coating of the chemical which covered the floor of the trailer. In turn the flames set fire to decedent's clothing resulting in severe burns from which decedent's death resulted some six weeks later.
Able counsel for appellees maintains the rule applicable herein is that of strict liability and accountability imposed upon the owners of dangerous instrumentalities which result in injuries to third persons as announced in Julian Gotreaux v. Roy Gary et al., 232 La. 373, 94 So.2d 293; Fontenot v. Magnolia Petroleum Company, 227 La. 866, 80 So.2d 845, and Romero v. Chris Crusta Flying Service, Inc., La.App., 140 So.2d 734. Counsel for appellees further contends defendant is liable herein under the rule of law which holds a party responsible for the foreseeable results of a dangerous condition or situation which he has created, citing in support thereof Brechtel v. Lopez, La.App., 140 So.2d 189, and other authorities. Appellees' final contention is to the effect defendant is liable under the principle that one employing a dangerous agency must use care commensurate with the danger and risk reasonably to be apprehended and must also give warning of the danger, it being expressly charged defendant herein failed to give any warning whatsoever of the dangerous propensities of the chemical which ignited and caused the death of plaintiff's spouse. In support of this latter contention esteemed counsel for plaintiff relies, inter alia, upon Prescott v. Central Contracting Co., 162 La. 885, 111 So. 269.
Illustrious counsel for appellant, however, maintains defendant is not liable to appellees because decedent was a trespasser to whom no duty of care was owed other than to refrain from wilfully or wantonly injuring her, consequently the case falls within the purview of the jurisprudence established by Foshee v. Grant, 152 La. 303, 93 So. 102, and other authorities, to the same effect, cited and relied upon by counsel for defendant.
Additionally, appellant argues decedent was adequately warned of the danger posed by the chemical in question consequently the case falls within the rule enunciated in Savell v. Foster, La.App., 149 So.2d 210, and others cited by counsel, to the effect that the owner of premises on which a dangerous condition exists discharges his duty of care toward third parties by warning them of the peril, and if the third party subsequently subjects himself to the risk and is injured recovery is barred because of assumption of risk. Appellant, of course, maintains adequate warning was given in the case at bar.
In the alternative, illustrious counsel for appellant maintains plaintiff's recovery is barred herein by the contributory negligence of decedent in boarding the vehicle in which *57 the inflammable substance was present, said decedent being allegedly possessed of full knowledge of the dangerous proclivities of the chemical in question.
In substance plaintiffs allege defendant, through its employees assigned to use the chemicals in question, were guilty of the grossest negligence in allowing or permitting the tractor and/or wagon containing such chemical to be parked in a place where defendant knew or should have known people would frequent and likely visit. It is further averred that defendant was aware its employees and their families were inclined to use defendant's equipment for personal reasons, therefore, defendant should have anticipated the danger to decedent as well as others living on the plantation and either warned them of the danger or made provision to keep such dangerous equipment in an area where it could not be contacted by those persons living upon defendant's plantation.
In answer to plaintiffs' petition defendant contends that all persons residing upon the plantation, particularly decedent, Ella Queen, petitioner Theodore Williams and Richard Edmonds, were fully aware of the dangerous propensities of the chemical in question considering defendant's overseer, Lynn Acosta, had repeatedly cautioned persons residing on the plantation to stay away from the equipment used for weed control and particularly against smoking in or around such equipment. Defendant further contends all persons living on the plantation, decedent included, were equally aware of the strict company rule against using equipment for personal use without permission from Acosta, and that Richard Edmonds, decedent, and Ella Queen were all trespassers insofar as concerns their use of the tractor-trailer on the date of the accident considering they each knew they were using same contrary to specific instructions. Appellant also maintains Edmonds was not acting within the scope and course of his employment by defendant considering he was then not a tractor driver, was taking decedent on a purely personal mission during the lunch hour and well knew that he was using the equipment in question contrary to express orders from his superiors.
From the testimony of Lynn Acosta, overseer on defendant's plantation, it is shown that defendant's tractors and wagons were ordinarily driven to and from the fields by duly assigned tractor drivers who, during the noon hour, ordinarily parked such equipment in a lot about 200 feet distant from the quarters. At night such equipment was usually parked in the "back quarters" unless the assigned driver had to use the tractor early the following morning. The tractors had no ignition keys and could be started by anyone who was familiar with the operation of such equipment. He acknowledged, however, that the wagons used in weed killing were brought to the water faucet across from the quarters for preparation of the mixture each day and for the added purpose of hosing down the trailers when the equipment was no longer needed in weed control operations. Acosta testified it was positively contrary to express, repeated company policy, which he himself proclaimed on many occasions, for any of the tractor drivers to use the tractors and/or trailers for personal use such as the transportation of persons to the "fishing ditch" for purely recreational purposes. In this regard he was fully corroborated by Ella Queen, Edward Queen and decedent's brother, Richard Edmonds, all of whom conceded that employees used defendant's equipment "behind Mr. Acosta's back" and in flagrant violation of his frequently announced prohibition of such use because of the danger thereto attendant. It is fair to state, however, that petitioner, Theodore Williams, alone testified he knew of no such rule of prohibition and that it was company policy to permit indiscriminate use of defendant's equipment by the employees. His testimony in this regard is what we deem an apparent fabrication considering the overwhelming weight of the evidence, including testimony of petitioner's own brother-in-law, is clearly to the contrary.
*58 The record fails to corroborate plaintiffs' contention that defendant's overseer, Acosta, condoned the practice of employees using defendant's equipment for purely personal purposes. On the contrary, the evidence is preponderately to the effect that in every instance of a violation coming to Acosta's attention he reprimanded the employee involved. Our learned brother below, in finding for plaintiffs, considered Acosta's repeated warnings regarding use of the equipment as knowledge of such practice and inferential condonation thereof. The conclusion, however, is unjustified since its effect is to place defendant in the untenable position of having its consent implied by its failure to admonish against such use as well as by its repeated admonition against use. The record, as a whole, clearly shows neither Acosta nor any other officer of defendant corporation consented either expressly or impliedly to the use of defendant's equipment by defendant's employees for personal purposes.
It is clear from the record before us that neither decedent, Richard Edmonds nor Ella Queen were authorized to use the equipment on the day in question but rather said parties were using the tractor and wagon contrary to the express policy and in violation of the repeatedly announced orders of defendant's supervisory personnel. Richard Edmonds himself testified to such effect.
A trespasser has been defined as one who goes upon the property of another without the other's consent. Malatesta v. Lowry, La.App., 130 So.2d 785; Alexander v. General Accident Fire & Life Assur. Corp., La.App., 98 So.2d 730. Similarly, one who uses the personal effects of another without the consent of such other is likewise a trespasser. This must be particularly so when, as in the instant case, the intruder is using the property of the other not only without the consent of the owner, but in express and direct contravention and violation of the owner's wishes and desires.
Appellees contend, in effect, that assuming decedent to have been a trespasser, defendant is nevertheless liable for failure to warn the public, particularly decedent herself who lived on the premises and was likely to come in contact with the dangerous chemical, of the danger and defendant is liable herein because even a trespasser is entitled to warning against a hidden danger or trap. In this regard counsel for appellees contends, in substance, that decedent was unaware of the dangerous nature of the chemical in question. Alternatively, counsel argues defendant was negligent in failing to post signs on its equipment or station guards to protect persons against the danger. In the further alternative counsel for appellees maintains defendant while cautioning employees and their families against contact with the chemical because of its poisonous qualities, negligently failed and neglected to inform them of the highly inflammable and combustible nature of the chemical.
Our careful consideration of the entire record leads to the inescapable conclusion that defendant's overseer Acosta and manager D. D. (Linus) Levert, Jr., expended considerable effort to apprise defendant's employees and their families of the dangerous nature of the chemical used in defendant's weed control program.
It is uncontroverted that both Levert and Acosta were thoroughly familiar with the chemical and its poisonous as well as its highly inflammable and combustible properties. Before commencement of the use of the chemical, information was obtained concerning its handling, application, use and storage. The chemical, in cans, was kept in an old abandoned warehouse on the plantation which, according to Levert, would not be much of a loss in the event of its destruction by fire. Employees of defendant were carefully instructed with respect to the mixing of the chemical with water to insure the proper ratio of ingredients. The method was demonstrated to the employees by Acosta who supervised the mixing process until satisfied it was thoroughly *59 understood by the employees to whose care the task was entrusted. Thereafter the employees repeated the process without supervision. The employees concerned were trained in the proper application of the spray in the fields pursuant to Acosta's supervision. On most occasions when weeds were sprayed Acosta or some other supervising officer was present or checked the operation frequently to prevent damage to defendant's crops considering the chemical sterilized the ground with which it came in contact and would therefore render infertile a portion of defendant's land if improperly or carelessly applied.
Levert and Acosta both testified without contradiction that the employees were told that no one except those trained in the use of the chemical and familiar with its application were permitted to handle it or use the tractor and wagon being employed in weed killing operations. It further appears water was kept available because of the danger of fire and overseers spent a considerable portion of their time supervising the operation.
Mr. Acosta stated he followed the tractor and wagon from the time it was taken out in the morning until the operator knocked off for lunch, at which time it was placed near the water supply. After lunch, it was the driver's duty to hose the wagon and remove it to the lot. Acosta further stated he personally advised the employees of the poisonous as well as the inflammable nature of the substance and gave express orders that none were permitted near the wagon when the chemical was being mixed. He also testified he forbade smoking or lighting matches near the chemical and warned the employees of the danger of fire. He stated he informed the women in the quarters as well as the employees and also warned the mothers to keep their children away. He had no independent recollection of personally warning decedent of the danger but did expressly recall having warned plaintiff herein that the substance was both poisonous and inflammable.
It is uncontradicted that at the time of the accident a can or drum containing the chemical was in the wagon and bore the admonition "Inflammable" in large letters. It is also uncontradicted that decedent's formal education extended through the 8th grade and that decedent was literate.
Plaintiff's brother-in-law, Richard Edmonds, testified he knew the herbicide was both poisonous and inflammable but did not realize it could be ignited by a burning cigarette. He conceded, however, Mr. Acosta had told "us" not to smoke around it.
Ella Queen, decedent's neighbor and acquaintance, testified she knew the weed killer was dangerous but did not know it would burn. She conceded Mr. Acosta had told the women the poison was very dangerous and "not to fool around the wagons". Ever since the poison was first used on the place she and everyone else had been instructed that they were not to "mess around with any" of the equipment used for poisoning. She likewise knew the wagon had been used that day for spraying the poison and upon boarding the wagon noted three or four spray cans and a large drum of the chemical in the wagon. She did not, however, see any of the chemical on the bed of the wagon.
James Johnson, an employee of defendant corporation and neighbor of Ella Queen, testified he was informed the chemical with which he was working was dangerous. On the day of the accident Ella Queen had requested him to take her fishing in the wagon and he declined after telling her the equipment was dangerous and there could be no smoking around it. He further testified Acosta had cautioned him not to smoke or scratch a match around the equipment and to get off the tractor whenever he wanted to smoke.
Edward Queen, Ella's husband, testified Mr. Acosta had warned the employees that before smoking after having handled the chemical, they should wash their hands. To his knowledge, Acosta had also cautioned *60 the children on the plantation to stay away from the wagons until after they were washed. He further testified he told Ella the herbicide was dangerous and also that his younger brother had told him it could be ignited by putting your foot on it. To his knowledge Ella had also told their children to stay away from the poison wagon.
Plaintiff, Theodore Williams, testified that although no one told him the chemical was dangerous, he knew it to be dangerous but did not know it would "burn like that." He thought it was dangerous to put in one's mouth and did not know it would be dangerous to smoke around the substance. He further stated decedent did not know the chemical was dangerous and he never mentioned the matter to her.
The general rule regarding liability of an owner for damages to third persons resulting from dangerous instrumentalities kept or maintained on the owner's premises is stated in 38 Am.Jur. verbo Negligence, Section 85, Pages 742-743, from which we approvingly quote as follows:
"It is generally true that one's right to maintain for a lawful purpose a dangerous appliance or instrumentality on his own premises is not limited or qualified by the degree in which it may be dangerous. Moreover, liability for negligence in keeping a dangerous instrumentality, as distinguished from liability for a nuisance per se, which may be incurred, under certain social conditions, by the maintenance of an agency which is excessively dangerous to life and limb, is not an absolute liability. The mere fact that an instrumentality may become dangerous to others does not constitute its possessor as an insurer against injury that may result therefrom.
* * * * * *
"A higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life or business which involve little or no risk. The law exacts of one who puts a force in motion that he shall control it with a skill and care proportioned to the danger created and with appliances which in view of the circumstances, are reasonably safe. As the hazard from the use, or threatened use, of dangerous instrumentalities increases, in all branches of the law, the responsibility of the person employing them becomes stricter and, in extreme cases, may be the equivalent of insurance of safety. Accordingly, it is well settled that one who has in his possession or under his control an instrumentality exceptionally dangerous in character is bound to take exceptional precautions to prevent an injury being done thereby. In other words, the essential requirement of due care under the circumstances necessarily implies that the care required to prevent the injury to others in using a dangerous instrumentality is a great or high degree, if not the greatest or highest degree of precaution. While no absolute standard of duty in dealing with such agencies can be prescribed, it is safe to say, in general terms, that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken. Much depends upon the nature of the instrumentality, the circumstances which surround its maintenance and use, the time and place of its use, and the status of the person injured, since the duty of the owner or person in charge of the instrumentality depends upon his knowledge or means of knowledge of its dangerous quality, which, in turn, depends in no small measure upon the probability of injury to be caused thereby.
* * * * * *
Also apropos the case at bar is the following statement of general law found in 38 Am.Jur. Verbo Negligence, Section 89, pages 748-749, in which we concur:
"Persons who own, operate, or maintain dangerous instrumentalities have a *61 right to rely upon others who may be imperiled thereby to take the usual and customary measures to avoid injury. They may assume, in the absence of information to the contrary, that others are in possession of their faculties and will exercise them in the normal and usual manner.
* * * * * *
However, the status or condition of the person to whom the duty to use care is owed affects the measure of precaution which must be taken to perform that duty fully. The care which is required where the duty is owing to a child entails a stricter responsibility than where it is owing to an adult of normal faculties. Accordingly, the measures taken by a person in regard to the care of a dangerous instrumentality may render him negligent in respect of a child who is injured, although they would constitute reasonable care under the circumstances if an adult were concerned."
We believe equally applicable herein the following pronouncement on the subject matter contained in 38 Am.Jur. Verbo Negligence, Section 91, pages 750-751:
"There is no absolute duty of giving warning of any particular peril; the necessity therefor depends upon the age, intelligence, and information of those to whom the warning might be due, and the obligation disappears entirely where it is shown that the injured person did in fact fully appreciate the peril. So, in respect of such perils as may be said to be obvious to the injured person, there is no obligation to give any sort of warning. He may be held guilty of contributory negligence because of his failure to protect himself against obvious perils."
Esteemed counsel for appellees maintains that those who employ agencies, instrumentalities or substances which might endanger persons or property must use care commensurate with the danger and risk reasonably to be apprehended, citing Prescott v. Central Contracting Co., 162 La. 885, 111 So. 269; Norton v. Louisiana Ice & Utilities, Inc., 18 La.App. 564, 135 So. 717; Utah Home Fire Insurance Co. v. Leonard, La.App., 100 So.2d 259. Counsel further contends a person using a highly inflammable herbicide on his own property incurs absolute liability for injuries or damages resulting from such use as held in Julian Gotreaux v. Roy Gary, et al., 232 La. 373, 94 So.2d 293; Fontenot v. Magnolia Petroleum Company, 227 La. 866, 80 So.2d 845; Romero v. Chris Crusta Flying Service, Inc., La.App., 140 So.2d 734.
In discussing the foregoing cases cited and relied upon by able counsel for appellees, we deem it of considerable significance to point out that in the case at bar, the herbicide or chemical was not being used at the time of the accident and neither was the fire which resulted in decedent's injuries in any way started by an employee or agent of defendant acting within the scope of his employment by defendant corporation. Because of this obvious distinction, we consider the following authorities inapplicable: Prescott v. Central Contracting Co., supra, which involved a fire started by the operation of a hoisting engine without a spark arrester; Utah Home Fire Insurance Co. v. Leonard, supra, wherein defendant's employees applied an inflammable floor sealer without first ascertaining whether the pilot light on a nearby automatic water heater was burning; Julian Gotreaux v. Roy Gary, et al., supra, and Romero v. Chris Crusta Flying Service, Inc., supra, involving damage, by airplane, on defendant's own lands; and Fontenot v. Magnolia Petroleum Company, supra, which involved damages to a house resulting from blasting operations. In the three latter authorities the rule of absolute liability was found applicable predicated on the doctrine "sic utere tuo ut alienum non laedas."
Norton v. Louisiana Ice & Utilities, Inc., supra, though pertinent, insofar as it reiterates the rule of reasonable care commensurate with the danger reasonably to be *62 apprehended is the criterion of liability in cases of the nature herein involved, said authority, nevertheless, is clearly distinguishable from the case at bar. In the Norton case, supra, a refrigerator repair man, engaged in the repair of an ice cream cabinet in a sandwich shop, was called away before completing his work and left an unlabeled bottle containing a strong solution of ammonia water on the counter where customers of the establishment usually ate. Ammonia water of the strength contained in the bottle was shown to be inherently dangerous and volatile, particularly in a warm atmosphere. The establishment was hot, there being three stoves or griddles burning at the time and the electricity which ordinarily ran cooling fans having been cut off to permit making the repairs to the ice cream cabinet. A customer entered the shop and sat at the counter. Noticing the bottle on the counter before him, the customer attempted to move it to one side whereupon the stopper blew out and the contents of the bottle struck him in the face and eyes. The court therein concluded defendant failed to exercise the degree of care commensurate with the nature and propensities of the substance involved and such negligence was the proximate cause of plaintiff's injuries. It is readily apparent the position of plaintiff in the Norton case is vastly different from that of decedent in the case at bar. In the former, the injured party was an invitee in a public restaurant, whereas in the instant case it appears clear beyond doubt decedent was in legal contemplation, a trespasser. Obviously the degree of care owed decedent by defendant in the instant case differs vastly from that owed an invitee by a mechanic or technician performing repairs to an electrical appliance situated in a public restaurant.
We believe the instant case must turn on the issue that decedent and her cotrespassers, who were involved in the joint venture of unauthorized use of property belonging to another, were all fully aware of the danger posed by the chemical or herbicide being used by defendant.
As herein previously shown, the record establishes beyond doubt that defendant's Manager, Levert, and Overseer, Acosta, took particular pains to warn the tractor drivers and other persons living on the plantation regarding the inflammable nature of the herbicide and gave strict instructions forbidding smoking or the striking of matches by anyone using the equipment. Acosta's testimony is to the effect he warned the women in the quarters not only to keep away from the wagons used for spraying but also to keep their children away. As also previously shown, decedent's brother, Richard Edmonds, who was driving the tractor at the time of the accident, and decedent's acquaintance, Ella Queen, who was riding in the wagon with decedent, were both fully aware the chemical was highly flammable and would easily burn. In addition, it is uncontroverted that there was present in the wagon at least one can of the chemical powder clearly displaying the warning "Inflammable." While the record does not show with absolute certainty that decedent herself was aware of the danger of fire, we believe, however, the evidence clearly preponderates in favor of the conclusion that she did in fact have such knowledge. In any event, it appears from the testimony that if decedent were not aware of the peril she was perhaps the only adult in the quarters who did not possess such knowledge.
Our learned brother below, though holding for plaintiffs and rejecting defendant's plea of contributory negligence, nevertheless found decedent guilty of imprudence as distinguished from negligence, and applied the provisions of Article 2323, LSA-Civil Code in reduction of the damages awarded appellees. In distinguishing negligence from imprudence, our esteemed brother used the definition of imprudence found in the 1960 edition of The American College Dictionary which, in his judgment, excluded *63 the concept of negligence from the term, imprudence. Some dictionaries, however, for example, Webster's Third New International Dictionary, unabridged, include the lack of caution and due regard for consequences in the definition of the term imprudence. Without engaging in splitting semantic hairs, it is to be noted Article 2316, LSA-Civil Code makes imprudence equally actionable as negligence and the jurisprudence has essayed few distinctions between said terms. It is further significant that any negligence, however slight, is actionable if it is the proximate cause of an accident resulting in injury or damage. It is equally well settled law that any negligence, however slight, on the part of the injured party will bar recovery provided the negligence constitutes a proximate cause of the accident, there being no authority for application of the rule of comparative negligence in this state. We recognize, however, an exception to the rule of contributory negligence in those instances wherein the doctrine of last clear chance is applicable but such rule is clearly inapplicable in the case at bar and has not been made an issue herein.
In both brief and oral argument before this Court, able counsel for appellees maintain defendant should be cast for failure to adequately warn the public that an invisible residue of the chemical present on the floor of the wagon would ignite and burn. In this connection it is argued that it was not the can of powder bearing the warning "Inflammable" which ignited but rather the invisible film which had collected on the wagon bed.
The answer to this contention lies in the fact that we are presently concerned with a trespasser and not an invitee or even a licensee. To escape liability it is not necessary that the possessor of the dangerous instrumentality warn trespassers of every conceivable peril incident to exposure to the dangerous instrumentality. Under such circumstances the owner or user may not set a trap for a trespasser and must give warning commensurate with the danger involved. In the instant case we believe the record shows adequate warning of the inflammability of the herbicide was given and knowledge thereof was possessed not only by decedent but also her two associates who were jointly engaged with her in the unauthorized use of defendant's equipment. We further believe our able brother below correctly found decedent's action in smoking a cigarette in the wagon to be an imprudent act. Assuming, however, defendant was negligent in leaving its wagon thus parked, unattended and without signs, we believe, insofar as decedent is concerned, our distinguished colleague below erred in concluding decedent's action, though imprudent, did not constitute contributory negligence barring her recovery. The mere leaving of the wagon in the place shown, would never have occasioned decedent's injury except for the occurrence of decedent's own intervening independent negligence in smoking in the presence of a chemical which she knew to be highly inflammable.
Conceding the obligation of defendant, insofar as concerns its plea of contributory negligence, to negate decedent's alleged lack of knowledge or, in other words, establish that decedent did in fact know of the danger, all that is required of defendant is to prove such knowledge to a reasonable certainty by a fair preponderance of evidence. In the case at bar we believe the evidence, as hereinabove analyzed, establishes, to that reasonable certainty demanded by law, that not only decedent but also her two cohorts, present with her in the wagon, were fully apprised of the danger.
Accordingly, the judgment of the trial court in favor of appellees is hereby annulled, reversed and set aside and judgment rendered herein in favor of appellant, J. B. Levert Land Co., Inc., and against appellees, Theodore Williams, et als., rejecting and dismissing said appellees' demands, at appellees' cost.
Reversed and rendered.