Filed 7/26/21  Ko v. Ly CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| LANDRY KO,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VANESSA ELISA LY et al.,<br><br>    Defendants and Appellants. | B303438<br><br>(Los Angeles County<br>Super. Ct. No. BC631656) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Barbara A. Meiers, Judge.  Affirmed.

Law Offices of Edgardo M. Lopez and Edgardo M. Lopez for Defendants and Appellants.

Landry Ko in pro. per. for Plaintiff and Respondent.

———————————————

Landry Ko transferred substantial cash and real estate to Vanessa Ly and her various companies, including Golden Pacific Investment, Inc. (Golden Pacific), in connection with several business deals. Ko filed a lawsuit against Ly and Golden Pacific (together, Defendants), alleging they owed him money on a promissory note and fraudulently took out loans on his properties. Following a bench trial at which Ko represented himself, the court entered judgment in his favor for more than $4 million. On appeal, Defendants argue Ko lacked standing to pursue his claims, and the judgment is not supported by sufficient evidence. We disagree and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Ko was introduced to Ly through his sister's boyfriend. Ly represented herself as a real estate expert with millions of dollars of property and connections to cheap materials and labor. Ko and Ly completed numerous business and real estate transactions. Their relationship soured, however, and Ko eventually filed a complaint against Ly and Golden Pacific, along with numerous other defendants that are not involved in this appeal. In the operative first amended complaint, Ko asserted causes of action for breach of contract, fraud, declaratory relief, conversion, unjust enrichment, and constructive trust.

The case proceeded to a bench trial, at which Ko represented himself. Ko presented evidence of three transactions with Ly for which he sought compensation.

The first transaction involved a hard money loan to Ly made through Ko's sister's company, TPB Investments, LLC (TPB). Ko transferred $380,000 to TPB, and TPB loaned Ly a total of $760,000. The loan was evidenced by a promissory note, and Ly paid interest on the note directly to Ko. Ko eventually

2

demanded repayment of the principal, but Ly refused. TPB then assigned the note to Ko.

The second transaction involved a joint venture to purchase and develop property that the parties refer to as the Mandevilla Property. To purchase the property, Ko directed Tri Diamond, LLC (Tri Diamond)—which he owned jointly with his sisters—to send $940,000 to Genus Capital, LLC, which Ly owned. Ko and his sisters had decided to shut down the operations of Tri Diamond and divvy up its funds, and the $940,000 represented Ko's share.

Ko later discovered that Ly did not use the funds to purchase the Mandevilla Property, but instead transferred them to one of her other companies. Nonetheless, Ly somehow purchased the property and built a home on it. After construction was complete, Ly told Ko they could take out a loan on the property and then lend the cash at a higher interest rate. Ko agreed to the plan.

Unbeknownst to Ko, however, Ly had already taken out a loan on the property for $630,000. Ly transferred some of those funds into another company she owned called Ly Family, Inc. She also used some of the funds to purchase a property for a man named Brad Lin.

Ly eventually transferred title to the Mandevilla Property to Ko, but she stopped making payments on the loan. Ko sold the property to avoid foreclosure, and he received approximately $42,000 from the sale.

The final transaction involved a home that the parties refer to as the Vista Property. Ko originally owned the Vista Property, which was worth $1.8 million free and clear of any debt. The plan was to make renovations to the property and then sell it.

3

Ko agreed to transfer the property to Golden Pacific because Ly represented she had capital losses that could offset any resulting capital gains.

Ko and Ly effectuated the transfer using a "fake sale," which made it appear as though Golden Pacific purchased the property from Ko. In reality, Ko did not receive any payment from Golden Pacific. In addition, one of Ly's companies put a fake mechanic's lien on the property for the sales price, apparently to avoid having to pay taxes.

After the transfer was complete, and without Ko's permission, Ly took out a $1.5 million loan on the property. The remodel work stalled and eventually stopped, and the property was in disrepair. Ly offered to destroy the property and pay Ko the insurance proceeds, but Ko refused.

Ly eventually transferred the property back to Ko. However, she stopped making payments on the loan, and the property was sold at a foreclosure sale. Ko spent about $50,000 trying to repair the property, but he did not receive any money from the sale.

Following trial, the court issued a "tentative partial statement of decision" in Ko's favor, finding he established his fraud claims, "as well as . . . other theories such as conversion, with a constructive lien imposed as sought in his operative Complaint . . . ." The court specifically found Ly fraudulently induced Ko, "through a whole series of misrepresentations on which Ko reasonably relied, into entrusting Ly with very substantial assets and funds, some of which went directly to Ly, but which more often were directed by her to be deposited or paid over to one of the entities which she employed to carry out her fraudulent schemes. [¶] . . . [T]he first step was to fraudulently

4

induce Ko to put title to [the Mandevilla Property and Vista Property] into her shell companies, even though neither they nor Ly had put in one cent in return.  The second was for Ly to use her shells to apply for loans against the properties and, without Ko's consent, to pull very substantial sums out of each property by means of issuing promissory notes to lenders . . . .  Once Ko discovered these transactions, of course, Ly promised to make all the payments on the loans in issue, but she did not, and, although she ultimately transferred title 'back' to Ko as to each property, he had no ability to pay the debts which she had put on the properties, causing them to be lost to him either through foreclosure or short sale . . . ."

As to damages, the court determined Ly and Golden Pacific were jointly and severally liable for $4,233,357, consisting of $940,000 related to the Mandevilla Property, $2,533,357 related to the Vista Property, and $760,000 under the promissory note. The court entered judgment reflecting the same, and Ly and Golden Pacific appealed.[1]

---

[1]  Defendants filed a request that we take judicial notice of their Joint Motion for Judgment filed in the trial court. The Joint Motion for Judgment already appears in the clerk's transcript, and Defendants do not explain why it is necessary to separately take judicial notice of the document.  Accordingly, we deny the request.

We also deny Ko's request that we take judicial notice of documents filed in a related bankruptcy case.  The documents are not relevant to the issues raised on appeal.

## DISCUSSION

### I. Ko's Motion to Dismiss Lacks Merit

Before turning to the merits of Defendants' appeal, we address Ko's motion to dismiss. Ko asserts numerous arguments, none of which has merit.

First, Ko urges us to dismiss the appeal because Golden Pacific was placed in default for failing to file a notice designating record on appeal, pay a deposit for a reporter's transcript, and pay a fee for holding the reporter's transcript deposit in trust. California Rules of Court, rule 8.140(b) permits the reviewing court to dismiss an appeal if a party fails to timely do an act required to procure the record. Although Golden Pacific received a notice of default under this rule, the appellate record contains a reporter's transcript as well as a copy of a notice designating record on appeal. It appears, therefore, that Golden Pacific cured any default. Accordingly, we decline to dismiss the appeal on this basis.

Ko next argues that Golden Pacific may not pursue this appeal because, according to a printout from the Nevada Secretary of State's website, its corporate status was revoked. "California law recognizes that the continuing legal existence of a corporation depends on the law of the state of incorporation." (*CM Record Corp. v. MCA Records, Inc.* (1985) 168 Cal.App.3d 965, 967.) Ko does not provide any authority explaining the legal effect under Nevada law of Golden Pacific's "revoked" status, let alone authority showing it prevents Golden Pacific from appealing a judgment against it. Accordingly, we decline to dismiss the appeal on this basis.

6

Ko alternatively urges us to dismiss the appeal because Defendants filed their opening brief a day late. The California Rules of Court provide that "[i]f a party fails to timely file an appellant's opening brief or a respondent's brief, the reviewing court clerk must promptly notify the party in writing that the brief must be filed within 30 days after the notice is sent, and that failure to comply may result in" sanctions. (Cal. Rules of Court, rule 8.360(c)(5).) If the party fails to comply with the notice, the court may then impose sanctions. (*Id*., rule 8.360(c)(6).) Here, it does not appear the clerk provided notice of Defendants' failure to file a timely opening brief. In any event, Defendants filed their brief within one day of the deadline. Under these circumstances, no sanctions are warranted.

Ko further contends dismissal is warranted because Defendants submitted altered exhibits in support of their opening brief on appeal. None of the alterations Ko complains about are relevant to the issues on appeal. Accordingly, we decline to dismiss the appeal on this basis.

Finally, Ko urges us to dismiss the appeal because Golden Pacific's corporate veil is nonexistent, and because he already received a partial payment of the judgment in connection with a bankruptcy action. Ko fails to explain why, even if true, either warrants dismissing the appeal. Accordingly, we will proceed to consider the merits of Defendants' appeal.

## II.  Scope and Standard of Review

The scope of our review of a judgment following a bench trial depends on whether the trial court issued a statement of decision in response to a party's request. Here, the record on appeal does not contain a final statement of decision or any indication that a party requested one. Instead, there is only a

7

"tentative partial statement of decision," which the trial court issued in a minute order the same date it entered judgment. Defendants do not reference or rely on the tentative decision, argue that it is the final statement of decision, or otherwise ascribe any significance to it. Therefore, we will treat it as what it purports to be: a tentative statement of decision.

While a tentative decision "may be valuable in illustrating the trial judge's theory," it will not "be used to impeach the order or judgment on appeal. [Citation.] This is because a trial court retains inherent authority to change its decision, its findings of fact, or its conclusions of law at any time before entry of judgment and then the judgment supersedes any memorandum or tentative decision or any oral comments from the bench. [Citations.] . . . . In the absence of a statement of decision, a reviewing court looks only to the judgment to determine error." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268 (*Shaw*).)

Accordingly, although we will use the court's tentative factual findings and conclusions of law as a guide in our review of the judgment, we will not construe the tentative so as to impeach the judgment. We will also "presume that the trial court made all factual findings necessary to support the judgment for which substantial evidence exists in the record. In other words, the necessary findings of ultimate facts will be implied and the only issue on appeal is whether the implied findings are supported by substantial evidence." (*Shaw, supra,* 170 Cal.App.4th at p. 267.)

Under the substantial evidence standard of review, "[w]e presume the record contains evidence sufficient to support the judgment, consider the evidence in the light most favorable to the judgment, and resolve all conflicts in favor of the judgment.

[Citation.]" (*County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 540, fn. omitted.) We also do not reweigh evidence or reassess the credibility of witnesses. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.)

## III. Ko Had Standing to Pursue His Claims

Defendants contend Ko lacked standing to pursue claims related to the TPB loan and Mandevilla Property. According to Defendants, the real parties in interest with respect to those claims were TPB and Tri Diamond, respectively. We disagree.

### A. Relevant Law

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (Code Civ. Proc. § 367.) When a plaintiff is not a real party in interest, the plaintiff lacks standing to sue. (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004.) A real party in interest is a party "possessing the right sued upon by reason of the substantive law." (*Killian v. Millard* (1991) 228 Cal.App.3d 1601, 1605.) Lack of standing is a jurisdictional defect that requires judgment against the nominative plaintiff. (*Scott v. Thompson* (2010) 184 Cal.App.4th 1506, 1510.)

Generally, standing is a question of law that we review de novo. (*San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73.) "However, where the superior court makes underlying factual findings relevant to the question of standing, we defer to the superior court and review the findings for substantial evidence." (*Ibid.*; see *Burrtec Waste Industries, Inc. v. City of Colton* (2002) 97 Cal.App.4th 1133, 1137.)

9

**B. The TPB Loan**

The trial court awarded Ko damages related to the TPB loan based on its finding that TPB assigned him the relevant promissory note. Defendants contend there is insufficient evidence to support that finding, and that Ko lacked standing as a result. We disagree.

"The burden of proving an assignment falls upon the party asserting rights thereunder [citations]. In an action by an assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue, [citation] but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary obligee." (*Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 292.)

Here, Ko introduced into evidence a document purporting to assign him the promissory note, which his mother signed on TPB's behalf. Defendants insist the trial court could not rely on this document because there is no evidence showing Ko's mother had the authority to assign the note. We disagree. The assignment itself states that Ko's mother is a managing member of TPB, which generally would have given her authority to act on TPB's behalf. (See Cal. Corp. Code, § 17703.01, subds. (a), (b)(2) [managers of an LLC generally have authority to bind the corporation].) Defendants did not object to the document on hearsay grounds, meaning the court was free to consider its contents for the truth of the matters asserted therein.[2] (See

---

[2] Defendants argue on appeal that the document does not qualify under the business records exception to the hearsay rule. They did not raise this objection below, which forfeits it on appeal. (See *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*

10

*Burke v. Bloom* (1960) 187 Cal.App.2d 155, 165 [absent an objection, "hearsay evidence may be considered in support of the judgment"]; *Smith v. Smith* (1955) 135 Cal.App.2d 100, 105 [hearsay evidence admitted without objection "became competent evidence"].) Ko also introduced into evidence, without objection, documents filed with the California Secretary of State indicating his mother was both a member and an executive officer of TPB. From this evidence, the trial court could reasonably conclude Ko's mother had the authority to, and did in fact, assign the note to Ko, thereby giving him standing to seek repayment under it.[3]

We further reject Defendants' passing contention that Ko failed to submit evidence showing his mother signed the assignment. Ly raised this issue in the trial court after the close of evidence, and Ko responded that he watched his mother sign the document. The trial court offered to allow Ko to reopen his case to make a proper record of that fact. Ly, however, told the court that was not necessary, which effectively withdrew the objection. As such, the issue is forfeited, and we decline to consider it. (Cf. *People v. Jones* (2003) 29 Cal.4th 1229, 1255 [the

_____

(1993) 14 Cal.App.4th 1595, 1611 ["It is hornbook law that a timely and specific objection is required to prevent the consideration of certain evidence; the failure to object at all waives any claim of error."].)

[3] Defendants briefly contend the trial court should have excluded the promissory note itself, and had it done so, Ko would lack standing to pursue his claim. It is not clear, and Defendants do not explain, how the admission of the promissory note is relevant to the standing issue.

11

withdrawal of an objection to the introduction of evidence forfeits the issue on appeal].)

### C.  The Mandevilla Property

Defendants contend Ko lacked standing to pursue claims related to the Mandevilla Property because the relevant funds for its purchase came from Tri Diamond, rather than Ko.  The trial court disagreed, finding the funds constituted Ko's proceeds from the liquidation of Tri Diamond.  That finding was supported by substantial evidence.  Specifically, Ko testified that he and the other owners of Tri Diamond decided to shut down the corporation's operations, and the funds represented his share of its assets.  According to Ko, rather than receive a disbursement, he directed Tri Diamond to send the funds directly to Ly's company.  This is sufficient evidence to show Ko is the real party in interest with respect to the Mandevilla Property funds.

## III.   The Judgment is Supported by Substantial Evidence

Defendants contend that Ko failed to prove fraud or conversion in connection with any of the relevant transactions.  None of their arguments warrants reversal.

### A.  The Mandevilla Property

Defendants argue there is insufficient evidence showing fraud in connection with the Mandevilla Property.  " 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' [Citations.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

12

Defendants first contend Ko failed to prove fraud because there is no evidence showing Ly took out a loan on the Mandevilla Property without his knowledge and consent. Not so. Ko expressly testified, without objection, that Ly did precisely that.

Defendants alternatively argue that, even if Ly obtained the loan without permission, Ko suffered no resulting damages given he subsequently agreed to a loan on the property. Defendants overlook that although Ko agreed to a loan, he did so on the condition that the cash be reloaned at a higher interest rate. The evidence at trial showed that Ly instead used some of the funds to purchase a property for a man named Brad Lin, and she transferred other funds to one of her companies. This was sufficient to show fraud in connection with the Mandevilla Property.

### B. The Vista Property

As to the Vista Property, Defendants argue there is insufficient evidence showing Ko was fraudulently induced to transfer the property to Golden Pacific, or that he suffered any resulting damages. Defendants' entire argument consists of a single sentence, and they fail to support it with meaningful analysis, relevant authority, or citations to the record. Accordingly, the issue is forfeited and we need not consider it. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].)

13

Even if we overlooked the forfeiture, we would conclude Ko submitted sufficient evidence of fraud. Ko testified that Ly convinced him to transfer the Vista Property to Golden Pacific, apparently in order to reduce capital gains in a subsequent sale. Ly then took out a loan on the property without Ko's knowledge or permission, and failed to make all the payments due on that loan. Considered with the evidence showing Ly did something similar in connection with the Mandevilla Property, the trial court could have reasonably inferred that Ly devised a plan to convince Ko to transfer title to Golden Pacific so that she could take out a loan on the property. The court could also reasonably infer that Ly purposefully withheld her plan from Ko, and that he would not have gone forward with the transaction had he been aware of it. Ko, moreover, presented evidence that Defendants' failure to pay the loan resulted in the Vista Property being sold at a foreclosure sale, which caused him to lose all his equity in it. This was sufficient to prove fraud.

Defendants alternatively contend the doctrine of unclean hands barred Ko from any recovery related to the Vista Property given he was involved in an illegal "fake sale." The doctrine of unclean hands "demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim. [Citations.] The defense is available in legal as well as equitable actions. [Citations.]" (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978.) Whether to apply "the unclean hands defense is a matter within the trial court's discretion." (*Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1495.)

14

Initially, we find Defendants forfeited their unclean hands defense by failing to raise it in the trial court. Defendants suggest Golden Pacific asserted the defense during its closing argument when it argued that Ko was "not an innocent party" given the evidence showing his involvement in the "fake sale." Golden Pacific did not, however, directly tie this evidence to an unclean hands defense. Instead, it argued such evidence showed Ko was a sophisticated actor who "knew what was going on and . . . was a part of all of the transactions that Golden Pacific participated in." At no point did either defendant directly argue that Ko's participation in the "fake sale" barred him from recovering on his fraud claim under the doctrine of unclean hands. Their failure to do so forfeits the issue on appeal. (See *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 355 [concluding the failure to raise an unclean hands defense in the trial court forfeited the issue on appeal].)

Even if we were to overlook the forfeiture, we would reject Defendants' argument on the merits. At the conclusion of trial, the court found "the idea to avoid taxes was [Ly's] idea; not [Ko's] at all. I believe that she's the one who came up with 'let's use a [mechanic's] lien' idea, not Mr. Ko. I believe he was a novice as he stated, guided, and directed by her all along the line." This suggests the court determined Ko and Ly were not equally at fault for any illegality surrounding the "fake sale." That factual finding, which Defendants do not challenge, was sufficient to defeat an unclean hands defense. (See *Warren v. Merrill* (2006) 143 Cal.App.4th 96, 115 ["the doctrine of unclean hands does not automatically bar equitable relief where the parties are not equally at fault"].)

15

### C. The TPB Loan

Defendants contend there is insufficient evidence showing fraud in connection with the TPB loan.  Although we tend to agree, that alone does not require reversal given Ko sought relief under multiple, alternative theories.  (*Shaw, supra,* 170 Cal.App.4th at p. 269 [reviewing court may affirm the judgment if correct on any legal basis, even if that basis was not invoked by the trial court].)  Based on our review of the operative complaint and Ko's arguments at trial, it appears his primary theory of relief related to the TPB loan was breach of contract.  Moreover, because there is no final statement of decision, we may infer the lower court made all factual findings necessary to support the judgment under such a theory.[4]  (*Shaw, supra,* 170 Cal.App.4th at p. 267; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)  There is nothing in the record to suggest the court did not make the requisite findings, and Defendants offer no other reason why Ko could not prevail on his breach of

---

[4]     Even if the "partial tentative statement of decision" constituted the final statement of decision, we would still reach the same conclusion.  An appellate court may make implied findings related to ambiguities and omissions in a statement of decision, unless they were brought to the lower court's attention and the court failed to correct them.  (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58; see Code Civ. Proc., § 634.)  Here, there is nothing in the record showing Defendants objected to the trial court's statement of decision or otherwise pointed out that the court failed to address Ko's breach of contract claim.

contract claim.  Accordingly, we may affirm the judgment on that basis.[5]

## DISPOSITION

The judgment is affirmed.  Ko is awarded his costs on appeal.

OHTA, J.[*]

We Concur:

GRIMES, Acting P. J.

STRATTON, J.

---

[5]    Because we conclude the judgment was supported under fraud and breach of contract theories, we need not consider Defendants' arguments that Ko failed to prove conversion.

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.